Smith v. McHenry.

---

No. 23,751.

Geo. A. Smith, *Appellee*, v. C. I. McHenry, *Appellant* et al.

SYLLABUS BY THE COURT.

1. Setting Aside Conveyance—*Fraud and Undue Influence—Insufficient Evidence.* Although a deed based upon a valuable consideration, as well as a mere gift, may be set aside under some circumstances because of the relations of the parties, where no further showing of fraud or undue influence has been made, and no proof of fair dealing has been supplied, it is held that in the present case the evidence does not support a finding that the contract in question was procured by fraud or undue influence.

2. Contract—*Agreement to Give or Convey Land—Consideration Support During Life.* A writing by which the owner of land, in consideration of the other party thereto supporting her during her life, agreed to give and

convey it to him "either by last will and testament, or in lieu thereof, this instrument to operate in all respects as a good and sufficient conveyance," is held, even if not operative as either a deed or a will, to be effective as a contract that he should have the land at her death.

3. SAME—*Substantial Performance by Grantee.* The fact that after the execution of the contract described in the foregoing paragraph the grantor allowed a will she had previously executed, which devised to the grantee the land in question and other property, to remain until her death unrevoked and unchanged shows an acceptance on her part of his performance of his agreement to support her. The performance of other agreements on his part is held to have been sufficiently excused.

Appeal from Washington district court; JOHN C. HOGIN, judge. Opinion filed May 6, 1922. Reversed.

*Lee Monroe, Guy L. Hursh,* and *C. M. Monroe,* all of Topeka, for the appellant.

*N. J. Ward,* of Belleville, for the appellee.

The opinion of the court was delivered by

MASON, J.: This case involves a controversy as to the right to an eighty-acre farm formerly owned by Helen Smith, the widow of Daniel Smith, who died in 1912, the claimants being George A. Smith and C. I. McHenry. The claim of the plaintiff, George A. Smith, is based upon two oral contracts with his foster parents, Daniel and Helen Smith, to the effect that when the survivor of them died he was to have all the property left, in consideration for certain services. The claim of McHenry, a defendant, is based upon a written contract entitling him (as he contends) to the tract referred to upon the death of Helen Smith, in consideration of his caring for her from the time it was entered into, and in discharge of an existing indebtedness of $1,500. The court allowed McHenry a lien for the $1,500, but otherwise the plaintiff recovered judgment. McHenry, who will be referred to as the defendant, appeals.

The trial court found specifically that the contracts under which the plaintiff claimed had been entered into, and that he had performed both on his part; that the written contract relied upon by the defendant had been procured by fraud and undue influence and that he had not performed the obligations he had assumed under it. The defendant asserts that while there was evidence to the effect that Daniel and Helen Smith had promised the plaintiff that he should be adopted and treated as their heir there was none tending to show any agreement that would prevent them from disposing

of all their property elsewhere by will. We shall assume that upon this proposition the evidence supports the finding and that the plaintiff in addition to having the rights of an heir was entitled to any property left by Mrs. Smith, who survived her husband, which was within her power to dispose of by will. Upon that assumption the case must be determined according to the effect given to the written contract relied upon by the defendant.

1. The defendant's mother, while not related to the Smiths, had been reared in their home and the defendant lived there from boyhood until he was married. Mrs. Smith lived with him during the last years of her life upon the farm now in dispute. She appears to have been about sixty-eight years old at the time the contract was executed, and died some five years later. The plaintiff contends that by reason of the fiduciary relation which the defendant sustained toward Mrs. Smith her assent to the written contract must be presumed to have been obtained by undue influence, and that in order to derive a benefit therefrom the defendant was required to prove the contrary. The defendant maintains that the rule invoked does not apply here, the contract being based upon a valuable consideration and the relation of the parties not being such as to give rise to that presumption. The rule is often stated as though applying only or especially to voluntary conveyances or gifts *inter vivos*. (*Smith v. Smith*, 84 Kan. 242, 114 Pac. 245, and note in 35 L. R. A., n. s., 950; 12 R. C. L. 953, note 6; 14 A. & E. Encycl. of L. 1011.) A deed or contract based upon a valuable consideration may, however, under some circumstances be set aside because of the relations of the parties where no further showing of fraud or undue influence has been made, and no proof of fair dealing has been supplied. (6 R. C. L. 637; Note, 21 A. S. R. 103. See, also, 18 C. J. 422, note 95.) "While equity does not deny the possibility of valid transactions between the two parties, yet because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption." (2 Pomeroy's Equity Jurisprudence, 4th ed., § 956.)

The lawyer by whom the contract in question was prepared and in whose office it was executed testified that Mrs. Smith came to

see him accompanied by two friends who signed it as witnesses; that he had had no previous conversation about the matter with the defendant; that the data were furnished him and the instrument was drawn before the defendant arrived; and that there was nothing to indicate that the agreement was not her free and voluntary act. While the trial court was not bound to accept the testimony of any witness there is nothing whatever in the record to suggest that full credence was not given to this version of what took place at the time of the preparation and signing of the instrument, or that there is any doubt of its correctness. The testimony of the two witnesses referred to was to the effect that they were fellow church members of Mrs. Smith; that they came with her at her request, she stating in a general way the purpose of the visit; and that there were no indications of any duress exercised upon her. Without attempting to lay down any general rule by which more or less similar cases may be solved we hold that whatever tendency the relation of the parties may have had to cast suspicion upon the good faith of the transaction, and to call for evidence of voluntary consent on the part of Mrs. Smith, was fully met by this uncontradicted evidence of what actually took place when the contract was signed, and that if it is to be held invalid it must be by reason of other evidence tending to show the exercise of undue influence or fraud.

No such evidence was produced unless it is to be found in testimony that may be thus summarized: Mrs. Smith often said that the defendant wanted a deed to the farm; that he was always "shouldering around after her for it"; that he was deviling her all the time about the place and she couldn't stand it down there; but she would not let him or any one else have a deed to it until she was through with it, and had refused to make a deed; that she had fixed everything the best she knew how—the best way she knew without deeding it, but he did not seem satisfied—that he would have to be satisfied with what she had done. (It does not appear whether these statements were made before or after the execution of the contract; a part of the language seems to indicate the latter.) She said that the home was unpleasant, there was so much profane language; that at one time when she had started to go to a neighbor's the defendant took her back and sat her down in a chair not very easy and told her she couldn't go. She would sometimes visit at the home of friends and pay her board. One Christmas the de-

fendant had been tantalizing her about his contract with her and she went to her room; he followed her in and told her if she wanted to lie down to come out on the couch so she would not catch cold; he took her by the arm and brought her out and threw her on the couch not very easy. One witness characterized her as "old, not very strong, and feeble and childish." Another said she seemed to be a woman that had a will of her own with respect to making the deed, but otherwise she was not. She executed the contract in question and also the will hereafter referred to by making her mark. Many checks drawn by Mrs. Smith were witnessed by the defendant. Presumably a short time after the contract was executed a neighbor who had noticed the defendant's riding around two or three times said to him that he had been riding around a good deal. He answered, "Yes, I am through now." He was asked if he had his business fixed up now and said, "Yes, I got it fixed, and fixed the way I want it, too."

The court does not regard this evidence, or other evidence of the same general character, as having any substantial tendency to show the exercise of undue influence upon Mrs. Smith, or the perpetration of any fraud upon her. A presumption of undue influence arises more readily with respect to the execution of a deed or contract than of a will. (*Ginter v. Ginter*, 79 Kan. 721, 744, 101 Pac. 634, 643.) But in either case in order for the evidence to be sufficient to warrant setting aside the instrument upon that ground it must show that a real consent was lacking. "The undue influence for which a will or deed will be annulled must be such as, that the party making it has no free will, but stands *in vinculis*." (*Conley v. Nailor*, 118 U. S. 127, 134.) "In order to render a deed void it must operate to deprive the grantor of his free agency, by substituting for his will that of another. It does not, therefore, consist in mere gratitude for kindness, affection, or esteem, where a conveyance is induced, . . . nor in a mere desire by the conveyance to gratify the wishes of another, if the free agency of the grantor is not impaired, nor even in suggestions, entreaties, and importunities, short of exactions overpowering the grantor's volition." (8 R. C. L. 1032.)

2. The plaintiff contends that the contract was not effective as a deed because it was testamentary in its nature, and was not effective as a will because it was not probated. It contained an agreement on the part of Mrs. Smith "to give, and to convey, either by last will and testament, or in lieu thereof, this instrument to

operate in all respects as a good and sufficient conveyance of the following described real estate;" and this agreement among others on the part of the defendant: "upon the death of the said party of the first part, the foregoing conditions having been carried out and the title to said lands vesting in him by virtue hereof to pay, or cause to be paid, within three months from such time, the sum of $100 in cash to G. A. Smith." It was at all events a valid contract that in consideration of the $1,500 for which she was already indebted to the defendant and of his caring for her and furnishing her a home during the rest of her life, and of other agreements on his part, he was to have the farm at her death. If it had been a will it would at the same time have been a contract, and while revocable in its aspect as a will would notwithstanding such a revocation have been enforceable as a contract. (*Nelson v. Schoonover*, 89 Kan. 388, 131 Pac. 147.) The prior contract with the plaintiff interposed no obstacle. That provided that whatever property was left undisposed of at the death of Mrs. Smith should go to the plaintiff. It did not prevent her disposing of the farm during her lifetime. She could sell it or mortgage it or perhaps even give it away. At all events she could contract with reference to it. She could use it as she did as a means for providing for her future support. Whether the instrument was itself sufficient to pass a legal title to the defendant at once or at the time of Mrs. Smith's death is not now important. It was at least as effective as the familiar type of oral contracts which are often enforced, where a promise made that in return for services the person performing them shall receive certain property at the death of the owner. Moreover, about two years before this contract was entered into Mrs. Smith had executed a will which was duly probated, leaving $100 to the plaintiff and giving the rest of her property to the defendant. No reason is apparent why the contract may not be interpreted as one to give the plaintiff the farm by will, effectuated on the part of Mrs. Smith by allowing the will she had already made, which gave him that with her other property, to remain unchanged. The plaintiff suggests that the will referred to was revoked by the later instrument, which was in itself a will. If it should be regarded as a will, not being inconsistent with that already executed, it could not affect its revocation. (40 Cyc. 1173.)

3. The court found that the defendant had failed to perform the contract on his part in that he did not, as his agreement required,

furnish Mrs. Smith with a suitable home or provide her one else-where, or make semiannual payments to her, or pay the expenses of her last sickness and funeral, or erect a monument over her grave. The defendant argues that so far as concerns her support, which would include the payment of money for her necessary expenses, the objection is one that could only be raised by Mrs. Smith her-self. Where a deed has been executed in consideration of the grantee undertaking to support the grantor for life there are cases holding that the grantee's failure to perform his agreement can be taken advantage of only by the grantor. (18 C. J. 170, note 68; 18 C. J. 364, note 15 [b]; *Roche v. Roche,* 286 Ill. 336.) The reasons given for the rule may not apply where the instrument executed is not a deed but a contract to make a will, no question there arising as to a forfeiture, or of divesting title by reason of the nonperformance of a condition subsequent. There was evidence that Mrs. Smith com-plained somewhat of the treatment she received, expressed dissatis-faction with it, and at times stayed with friends, paying board. It does not appear, however, that she was refused money or that she abandoned her home with the defendant. On the contrary she seems to have remained with him until her death. Inasmuch as she refrained from revoking or changing the will she had already made in his favor we think she must be regarded as having shown her-self sufficiently satisfied with the existing conditions to accept such performance as he offered and treat the contract as still in force. Of the defendant's omission to pay the expenses of Mrs. Smith's last illness and funeral and to erect a monument these explanations are offered in his brief: Such expenses were paid in due course of the administration of her estate, he supposing that inasmuch as he was her residuary legatee it came to the same thing as payment by him; and Mrs. Smith before her death caused a monument to be erected. Neither statement of fact is challenged in the brief of the plaintiff, and we deem the excuses sufficient.

The judgment is reversed and the cause is remanded with direc-tions to render judgment in favor of the defendant quieting his title to the land as against the plaintiff.

Smith v. McHenry.

## OPINION DENYING A REHEARING.

### (Filed July 8, 1922.)

SYLLABUS BY THE COURT.

CONTRACT—*Conveyance of Land—Consideration Maintenance of Grantor During Life—Contract Valid.* The fact that one has made a binding contract to leave to another all the property remaining to him at his death does not prevent his making a later valid contract that a tract of land then owned by him shall upon his death go to a different person in consideration of his caring for him during the rest of his life. The first contract has relation to the property which up to the time of his death remains subject to his disposal and the use in good faith of a particular piece of property, although comprising practically his entire estate, to secure his maintenance during his life, withdraws it from that category. Even if a will is made devising the tract in pursuance of the second contract the person named as devisee acquires his rights with respect thereto through the contract, the devise serving merely to transfer the formal legal title in accordance with the agreement.

The opinion of the court was delivered by

MASON, J.: In a motion for a rehearing it is urged that Mrs. Smith's contract that McHenry should have the eighty-acre tract when she died cannot be enforced without violating the rights of the plaintiff under her earlier agreement to leave to him all the property remaining to her at the time of her death. This matter was discussed in the original opinion, but perhaps not at sufficient length to make the view of the court clear. By the first contract Mrs. Smith did not agree that the plaintiff was to receive any particular property. She did not undertake that she would have any property when she died, but that whatever she then had should be left to him. This agreement we regard as having reference to property of which at the time of her death she had the power of disposal. She could have deeded the tract in question to McHenry or to any one else, reserving a life interest in herself, without any invasion of the plaintiff's rights. (See 40 Cyc. 1069.) What she did was to bargain away the ownership of the land after her death to secure her support during life and to satisfy the debt she owed. The contract was immediately effective; it was not ambulatory; there was no power of revocation. Mrs. Smith had by her earlier contract lost the power to devise or bequeath to any one but the plaintiff property which at the time of her death still remained to her in the sense of still being subject to her disposition. But property which she

had in good faith bargained away to secure her support, although no conveyance had been executed, was thereby withdrawn from that category.

In *Reed, Ex'r, v. Hazleton,* 37 Kan. 321, 15 Pac. 177, the provision of a contract that after the death of one party the title of land then owned by him should vest in the other, who agreed to care for him during his life, was held to be unenforceable because it was testamentary. In a later decision, however, the case was distinguished from those in which specific performance of somewhat similar contracts had been allowed, upon the ground that an adequate remedy at law was available because of the brief period during which services had been rendered under it. (*Hazleton v. Reed,* 46 Kan. 73, 26 Pac. 450.) Our statute has abrogated the common-law rule that an estate to vest in the future cannot be directly granted. (*Miller v. Miller,* 91 Kan. 1, 4, 5, 136 Pac. 953.) A deed which purports to "take effect" upon the death of the grantor, but of which he has made a delivery by placing it beyond his power of recall, has often been held valid by construing it as intended to pass a present title, the enjoyment alone being postponed. (*Nolan v. Otney,* 75 Kan. 311, 89 Pac. 690, and cases there cited; Note, 11 A. L. R. 23, 74.) Of course an instrument which literally does not take effect until the grantor's death is testamentary and revocable. The present contract obviously became effective at once and was irrevocable. It undertook to bring about results which were unquestionably within the power of the parties, notwithstanding the prior agreement of Mrs. Smith that the plaintiff should receive the property remaining to her at her death. If it failed in this respect the reason can only have been because the method pursued was not adapted to the purpose, although expressing clearly the intention of the parties, and we do not think this was the case. Although the legal ownership of the tract is conceived as reaching McHenry through the will his rights with respect thereto were acquired under the contract, the devise serving merely to transfer the formal title in accordance with the agreement.

The motion for a rehearing is denied.