No. 25,021.

MATT REZAC et al., *Appellants*, v. CHARLES REZAC et al., *Appellees*.

### SYLLABUS BY THE COURT.

1. ACTION TO SET ASIDE DEED—*Mental Incapacity—Undue Influence.* Following the rule that where there is substantial evidence to sustain a finding of the trial court, the decision must be upheld on appeal, the finding that the grantor who had made a deed conveying land to his son had mental capacity to make a contract and was free from restraint or undue influence when the instrument was executed, is held to be sustained by sufficient evidence.

2. SAME—*Mistake of Facts—Not Necessarily an Insane Delusion.* A mistaken belief as to facts for which there is some basis, or an illogical conclusion therefrom, is not necessarily an insane delusion.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed February 9, 1924. Affirmed.

*W. F. Challis,* of Wamego, and *W. J. Gregg,* of Frankfort, for the appellants.

*A. E. Crane,* of Topeka, *A. O. Justice,* of Osage City, and *Bartos & Bartos,* of Wilbur, Neb., for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to set aside a deed executed on March 20, 1915, by Joseph Rezac to his son Charles. He conveyed three hundred and twenty acres to his son Albert, the validity of which is being tested in another action. The grounds for setting aside the deed are that it was obtained by the exercise of undue influence and fraud, another that the deed was made when the grantor was under the insane delusion that his children other than Charles and Albert were attempting to deprive him of his property, and further that they intended to do him bodily harm. There was an added ground that when the conveyance was made he was about ninety years old and without mental capacity to make the instruments he signed. The deed in question was made in consideration of the payment of $6,750, of which amount $1,250 was to be paid in cash and the balance, $5,500 was made payable upon demand of the grantor and was to bear interest at five per cent per annum, payable annually. On December 3, 1919, Joseph Rezac was found to be of feeble mind and incapable of managing his own affairs, and his son Matt Rezac was then appointed guardian of his estate. In July, 1920, Matt Rezac, as guardian, brought this action, but before it

Rezac v. Rezac.

was tried, and on July 23, 1920, Joseph Rezac died. The action was then revived and all of the heirs including his eight children and the widow and chilren of a deceased son, were made parties to this action.

The court found that Joseph Rezac had consulted his attorneys with reference to the execution of deeds to his two sons, Charles and Albert, and also that the sons had no knowledge that the father was contemplating such action. They were sent for and were informed by their father of his purpose to sell them the land on the conditions named in the deed, that their father dictated the terms and conditions provided in the deeds and fully discussed his purposes and plans with all the persons present, which included his daughter Annie and her husband. It was also found that he was then of sound mind and memory and had sufficient capacity to understand fully what he was doing, knew what property he owned and the disposition he desired to make of it, and that when the deeds were executed he was free from any restraint or undue influence. At the time he executed the deeds he also executed his last will and testament, making a complete disposition of his property, and the court found that this also was executed when he was of sound mind and memory and when he was free from restraint or undue influence. Two years later he executed a codicil to the will in which he provided for the payment of $4,000 to his daughter Annie in consideration of her taking care of him until his death. This will was duly admitted to probate and is in force and effect now. After the delivery of the deeds, and during his lifetime, he collected the interest due under the terms of the deeds executed to Charles and Albert and also collected at one time a payment of $1,000 on this indebtedness. During his lifetime he never complained of any circumstances or facts connected with or surrounding the execution of the deeds, and the court found generally that the deed to Charles Rezac was valid and binding.

Plaintiffs appeal and contend that the father was under an insane delusion that his children other than Charles and Albert were actuated by a purpose and were scheming to obtain possession of his property. Much evidence was offered with reference to his mental capacity to the effect that at one time he insisted on going to the funeral of his son Frank, in Cleveland, Ohio, when he was physically unfit to make the trip, that he left his former home at another time without assigning a cause for going, that when he applied to

his attorneys to write the deeds and the will they advised him to wait a while until his mind was in better condition, that in conversation he would jump from one subject to another and required constant watching, that he claimed to own the land after the deeds were executed and had manifested abnormal emotion at times such as crying over fancied wrongs.

· As to mental capacity a great deal of evidence was produced and much of it sustains the holding that Joseph Rezac had the soundness and strength of mind necessary to make a contract. He had personal peculiarities and what might be termed eccentricities, as many have whose mental capacity is not open to question. Mere eccentricity of conduct, however, does not of itself prove unsoundness of mind. There is testimony which shows that he remembered without difficulty the several pieces of property which he owned, understood their values, comprehended the nature and effect of the instruments he was executing and the disposition he desired to make of his property. It is evident that he desired to dispose of his property and convert it into another form which would require less attention and yield him sufficient income to care for him the balance of his life. The deed was executed after considerable deliberation, and instead of the defendant and his brother using undue influence to procure the conveyance, it appears that the father sent for the sons and when they arrived in Nebraska, in response to the invitation, the defendant was averse to making the purchase and of assuming so large an indebtedness. The evidence tended strongly to negative the idea of undue influence.

The contention that the father was under an insane delusion was a matter to be determined from the evidence. There had been disagreements with some of his children about money matters and property. Testimony was offered that he expressed a wish to make a division of his property in his lifetime to avoid litigation after his death, but there is evidence that he also entertained the opinion that his children were trying to get his money and property from him. He may have been mistaken as to the motives of the children accused, but if there was some basis for the belief entertained or if it rested upon prejudice such belief of itself cannot be regarded as evidence of insanity. A mistake as to existing facts, or an illogical conclusion therefrom, is not necessarily an insane delusion. (*Akins v. Akins,* 109 Kan. 453, 199 Pac. 922. See, also, *Wisner v. Chandler,* 95 Kan. 36, 147 Pac. 849; *Bean v. Bean,* 144 Mich. 599; *Hutchinson*

*v. Hutchinson,* 250 Ill. 170; 40 Cyc. 1013.)   It cannot be held that the evidence compelled the conclusion that the deed was executed as a result of an insane delusion of the grantor.

The findings of the trial court being supported by sufficient evidence the result must be affirmance of the judgment.