No. 35,532

C. J. MANN, Guardian of the Estate of ANNA S. STAATZ, an Incompetent Person, *Appellee*, v. ALBERT H. STAATZ, JR., and MABEL STAATZ, His Wife, *Appellants*.

(133 P. 2d 103)

Opinion filed January 23, 1943.

*Robert Stone*, of Topeka, argued the cause, and *John H. Lehman*, of Abilene, and *James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman*, all of Topeka, were on the briefs for the appellants.

*Matt Guilfoyle*, of Abilene, argued the cause, and *Thornton D. Scott*, of Abilene, was on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to set aside a warranty deed on

the ground of incompetency of the grantor, undue influence by the grantee and want of adequate consideration. Plaintiff prevailed, and defendants, the grantee in the deed, and his wife, appeal.

The appeal is from the order overruling appellants' motion to set aside findings of fact and conclusions of law.

The deed was executed by Anna S. Staatz, an aged mother, to her youngest son, Albert H. Staatz, Jr., on January 4, 1939. Shortly thereafter proceedings were commenced by certain children of Anna S. Staatz to have the mother declared incompetent. She was so declared, and that adjudication was affirmed on appeal to the same district court in which the instant action was later instituted. After the adjudication of incompetency, C. J. Mann was appointed guardian of the estate of Anna S. Staatz, an incompetent person. The grantee in the deed appealed to this court from the judgment which declared Anna S. Staatz to be an incompetent, but that appeal was dismissed. Thereafter the instant action was filed by the guardian to set aside the deed upon the grounds previously stated. The deed was set aside and this appeal followed. While the appeal was pending Anna S. Staatz died. C. J. Mann was appointed administrator of her estate, and the administrator was substituted for the guardian as appellee in this court.

In the instant case the district court made findings of fact and conclusions of law which were:

"FINDINGS OF FACT.

"1. Anna S. Staatz, whose guardian is the plaintiff in this action, was born in Germany in 1850. She was married in the seventies, and lived with her husband until about fifteen years ago. To this union were born eight children, seven of whom are living.

"2. Anna S. Staatz acquired title to three hundred and twenty acres of land in Dickinson county, Kansas, of the present value of $10,000, and of a house and lot in Woodbine, of the value of $600, which are described in the petition filed in this action.

"3. On January 4, 1939, Anna S. Staatz executed to her son Albert H. Staatz, Jr., a warranty deed conveying to him the above-described property, subject to a mortgage of $3,000, on the farm land, which was all of the property she had excepting $200 in the bank, against which she authorized Albert to write checks.

"4. On the 29th day of November, 1939, Anna S. Staatz was adjudged an incompetent person by the above-named court in an appeal from the probate court of said county, and C. J. Mann was appointed guardian of her estate.

"5. Albert H. Staatz, Jr., is the son of Anna S. Staatz, and Mabel Staatz is his wife.

"6. At the time of the execution of said deed Anna S. Staatz was about ninety years of age. She and her husband had lived upon the farm in question for many years, and until they purchased the house and lot in question in Woodbine, Kansas, to which they moved about twenty-five years ago.

"7. Anna S. Staatz in the past several years had severe sick spells. She had become childish and forgetful, and at a family conference about 1935 or 1936 it was decided to have a guardian appointed for her, and Albert and his elder brother Julius went to the probate court in Abilene for that purpose, but such proceedings were not completed.

"8. Shortly before January, 1939, Anna S. Staatz began making her home with her son Albert, and was living with him at the time of the execution of the deed in question, and was under his influence. It was he who summoned the attorney who wrote up the deed in question, and also summoned Mr. Mann, a notary public, with directions to bring his seal with him.

"9. The only consideration for the deed in question was a contract executed at the same time as the deed, which provided that Albert was to care for his mother as long as she lived, and was to pay his brother Julius $500 and his sister Amelia $2,500. Later this contract and the only copy thereof, with the consent of Anna S. Staatz, were destroyed.

"10. In March, 1939, a new contract was made to be substituted for the destroyed contract. This new contract provided that Albert was to provide for his mother as long as she lived, pay her burial expenses, and after her death pay $200 to each of the seven other children.

"11. At the time of the execution of said deed, Anna S. Staatz had a severe sickness and there was apprehension that she might not survive but a short time. She was brought downstairs in a chair and propped up and was in this condition at the time of the execution of the deed in question. At that time she knew what property she had and the names of her children, but was of feeble mind to such an extent that she was incompetent to transact business and the deed in question was obtained without adequate consideration, while she was under the influence of her son Albert, and while she was sick, feeble and incompetent to transact business."

"Conclusions of Law

"The deed in question is void and should be set aside for that reason."

Appellants contend the findings of fact are not supported by the evidence but are contrary thereto. The contentions on appeal grow out of finding No. 11. We shall first direct our attention to the portion thereof in which it was found that on January 4, 1939, Anna S. Staatz was of feeble mind to such an extent that she was incompetent to transact business.

Appellants emphasize the fact the same district court which affirmed the probate court's adjudication of incompetency later rendered the judgment in the instant case. They insist the trial judge was prejudiced by reason of his former ruling on the subject of incompetency in the case which was appealed to the district court

from the probate court. Appellants very properly remind us that the instant deed of January 4, 1939, was executed prior to the incompetency hearing in the probate court. They therefore urge us to carefully scrutinize the record in order to determine the grantor's competency on the date the instant deed was executed. We have carefully examined the record and in so doing have given particular attention to appellants' request.

On appeal from findings of fact this court, as repeatedly stated, is concerned only with evidence which supports or reasonably tends to support the findings made, and not with evidence which tends to disturb them or is contrary thereto. (*Davis v. Sherman,* 149 Kan. 104, 86 P. 2d 490.)

Was there substantial evidence to support the finding of the mother's incompetency on January 4, 1939? Some of appellee's evidence discloses: The mother was 90 years of age on the 8th day of March, 1939, following the execution of the deed on January 4, 1939. She had been in failing health since her 80th birthday and after 1934 had various sick spells every winter, some of which lasted two or three months. She had had pneumonia and some heart trouble. Following her 80th birthday her memory began to fail noticeably. She complained she was no longer able to remember things. About 1932 or 1933 her sons, Julius and Albert, Jr., appellant, discussed with her the matter of having a guardian appointed, and she asked Albert, Jr., what he thought of it, and Albert, Jr., approved it. She directed them to make preparation for such an appointment. The papers were filed the next day, but those proceedings were not consummated. A family conference in which five members, including appellant and the mother, participated, was held in 1936 or 1937, concerning the appointment of a guardian. The mother and appellant agreed it would be well to have a guardian appointed. It was left to the appellant and his brother Julius to attend to the matter. (From the record before us it is not entirely clear whether there were two conferences of this character, one in 1932 or 1933, and another in 1936 or 1937, or whether there was only one family conference and that the various witnesses who testified concerning it were mistaken in the date of the conference; at any rate no guardian was appointed prior to the execution of the deed in question. The proceedings which culminated in the appointing of a guardian were instituted two or three months after the instant deed was executed.)

There was testimony of a daughter and son-in-law, who saw the mother at Albert's home on January 4, 1939, immediately after the deed was executed. Both of them testified positively that the mother was very sick and incompetent to transact business of any kind or to make the deed in question. The son-in-law testified "She didn't seem to know what was going on. She was in no shape to do business and I really thought she would die." He further stated that, in his opinion, the mother should not have transacted any business after she was 80 years of age. The daughter testified in substance:

We (meaning she and her husband) were sent to the kitchen at Albert's home, when we arrived on January 4, 1939, by Mabel (Albert's wife), and were told we would have to wait, as mother was very sick and they were executing some legal papers in the other room; (they waited about half an hour before they saw the mother); she was very sick and in no condition to know what was going on; I saw her again the next morning and again that same night; she was about the same; I was there again the following day and on that day mother had hallucinations about, chickens being on the bed and about men on the ceiling.

The same daughter further testified concerning the last mentioned visit:

"I said to Mabel, Albert's wife, 'She is sure out of her head when she talks that way.' Mabel said, 'She talked like that for a week or more.' Albert said she was a very sick woman. He said he didn't think she would pull through in her old age. He said the doctor said it was just a short time, a matter of a couple of hours or days."

Another son testified in substance: Albert came to his home the morning after the deed was drawn and wanted him to call the doctor; Albert said mother was very sick and he wanted me to hurry and come to the house; he said mother might be gone before we got there; when they got there mother looked almost like she was dying; he knew what the mental condition of his mother had been for a number of years; she had said to him: "Julius, I am just getting too old. My mind wanders away. I forget"; at one time his mother was worried about the fact that the interest on the mortgage and the taxes on her property had not been paid; they went to banker C. J. Mann, who had been advising his mother about business affairs, and Mr. Mann reminded mother she had previously come to the bank and had paid everything; mother replied: "Well, I had forgot, I don't know nothing about it." In 1932 and 1933 he (Julius) and

Albert had both suggested to their mother that she should have a guardian appointed to tend to her business affairs; she directed them to have it done; he and three sisters signed the mortgage on mother's farm with her; the mortgage company insisted on some of the heirs signing because mother was too old, the mortgage company wanted to know who the heirs were; at the time mother executed the deed in question she was not competent to transact business; he did not think she would have known on that day whether the paper she was signing was a deed, mortgage or lease.

The wife of the last previous witness testified in substance: Albert told them the morning after the deed was signed that mother was very low; he wanted us to call the doctor and hurry out to the house; they hurried over to the house and mother was very low; she didn't know us at all.

Some of the other children also appeared as witnesses for appellee, but their testimony adds little, if anything, to what has already been related. One of them testified she did not favor the appointment of a guardian in 1936, and knew of no bad deals her mother had made, but she didn't know of any contract or deal her mother had made without assistance since she was 80 years of age.

Appellants strenuously argue the testimony of incompetency was not substantial. In support of the contention they insist the witnesses who testified the mother was incompetent had, according to their own testimony, participated in business affairs with the mother which indicated they must have believed she was competent to transact her own business. That contention undoubtedly was vigorously urged upon the trier of the facts. It, however, has lost its potency on appeal. Such inconsistency, if it actually existed, was attempted to be explained by the witnesses. The explanation may have satisfied the trial court. On the other hand, the testimony concerning the mother's incompetency in years prior to 1939 may not have been convincing. The trial court did, however, believe the testimony that the mother was incompetent to make the deed on January 4, 1939. While there was much conflict in the testimony with respect to the mother's condition on that date, we simply cannot say there was no substantial testimony of her incompetency to execute the deed on that date. There was in fact testimony of utter incompetency to transact any business on the day in question. For this court to say she was competent to execute the deed is tanta-

mount to directing the trial court what testimony it was obliged to believe. Such is not our prerogative or function.

At the trial of the instant case the weather was bad and the mother was unable to attend. It was stipulated her oral testimony adduced in the guardianship proceedings in the probate court and her oral testimony on appeal of that case to the district court, might be used in the instant case. Appellants insist that testimony should now be treated by this court as a deposition and that we, therefore, have the same opportunity to determine what weight the mother's testimony should be given as the district court had. The contention is too broad. The same district judge heard her oral testimony in the guardianship case. He saw her and observed her demeanor and mental reactions. He was required to form his own conclusions concerning her competency from all the circumstances. We have had no such opportunity. It is true that in that hearing the mother testified concerning the execution of the deed and contract on January 4, 1939. But whatever might be said concerning her own testimony and the testimony of other witnesses, it does not alter the fact that there is substantial evidence the mother was wholly incompetent to transact business or to execute the deed on the particular day in question. That conclusion ends the lawsuit with respect to the issue of incompetency.

Appellants rely particularly upon the following cases: *Ginter v. Ginter,* 79 Kan. 721, 101 Pac. 634; *Shell v. Mulligan,* 103 Kan. 185, 173 Pac. 286; *Linn v. Blanton,* 111 Kan. 743, 208 Pac. 616; *Smith v. McHenry,* 111 Kan. 659, 207 Pac. 1108; *Rezac v. Rezac,* 115 Kan. 482, 223 Pac. 295; *Warwick v. Zimmerman,* 126 Kan. 619, 270 Pac. 612; *Osborn v. Coverdale,* 129 Kan. 55, 281 Pac. 897; *Ismert-Hincke Milling Co. v. Ismert Estate,* 135 Kan. 745, 13 P. 2d 279. Most of these decisions deal primarily with the subject of undue influence. None of them contain anything which would require or permit us to set aside the finding of incompetency. Since the mother was actually incompetent to make the conveyance, the instrument was without legal effect. That fact having been definitely and conclusively established, the questions of undue influence in obtaining the deed or lack of adequate consideration therefor, become immaterial. (*In re Estate of Boyce,* 155 Kan. 549, 127 P. 2d 424.)

The judgment is affirmed.

PARKER, J., not participating.