No. 37,024

In the Matter of the Estate of Lizzie S. Wert, Deceased (MILDRED WERT, *Appellant,* v. W. S. PHILLIPS, Administrator, *Appellee*).

No. 37,023

In the Matter of the Estate of Lizzie S. Wert, Deceased (MILDRED WERT, *Appellant,* v. KENNETH J. WERT, and W. S. PHILLIPS, Guardian of the Person and Estate of Kenneth J. Wert, Incompetent, *Appellees*).

(199 P. 2d 793)

Opinion filed November 30, 1948.

*Earl Bohannon* and *Elmer W. Columbia,* both of Parsons, argued the causes, and *John B. Markham, Herman W. Smith, Jr.,* and *J. Logan Shuss,* all of Parsons, were with them on the briefs for the appellant.

*A. L. Foster,* of Parsons, argued the causes, and was on the briefs for the appellees.

The opinion of the court was delivered by

COWAN, J.: These cases are here on rehearing. The original opinion is found in 165 Kan. 49, 193 P. 2d 253. After the opinion was filed all parties petitioned for a rehearing and it was granted. Additional briefs have been filed, the cases reargued and reconsidered. The appellee contends that the judgments below should be affirmed for the reason that the question of determination of the existence of

the contract was for the trial court and its conclusion is binding upon us. We have carefully reëxamined the records and briefs in these cases with particular regard to this contention and after full consideration, we adhere to our former holding that the trial court was not justified in determining that the "alleged contract was not entered into." Why or how the court below reached this conclusion is immaterial. In any view, its judgments were unwarranted and should be reversed.

The appellant urges on rehearing that the evidence establishes the existence of the contract, its terms, and performance thereof by the appellant, and that by reason thereof judgment should be directed in appellant's favor. A complete and careful analysis of the testimony is set forth in the former opinion and need not be restated here. However, mention of some of the salient features may be of assistance in disposing of the present contentions of the parties. Three witnesses testified on behalf of the plaintiff to the making of the contract and its terms. Some eight other witnesses testified to declarations by J. E. Wert and Lizzie Wert made subsequent to the date of the contract, which declarations recognized the existence of the contract and its binding force upon them. There is no substantial evidence to contradict these witnesses. So far as the record discloses, ten of these witnesses were candid, unprejudiced, and there is nothing improbable about their testimony. Cross-examination did not weaken their testimony in any wise.

There was nothing to discredit the testimony of the eleventh witness, Cora McDaniels, other than that she was a sister of Mildred and that certain evidence was offered to show she had testified in the probate court Mildred was to remain single, while in the district court she testified Mildred was to remain single *as long as J. E. Wert and Lizzie Wert lived.* As we shall hereafter point out, under the circumstances of this case, this difference is merely one of inference.

On the other hand, outside of the impeachment testimony as to Cora McDaniels, appellee's evidence consisted largely of negative evidence of performance of a subsidiary condition. There is no contention that Mildred did not perform the principal condition, namely, that she remain single. In the view we take of these cases, the negative evidence of performance of this subsidiary condition is not determinative of the questions here involved. The substance of the contract, established by the evidence, is that if Mildred would

remain single as long as the parents of Calvin were alive, such parents, at their death, would leave to Mildred, Calvin's share of the estate. This was testified to in varying language by the different witnesses. But it is claimed by the appellees that there is a conflict in the testimony in that some of the witnesses stated the contract to be that if Mildred would remain single (without adding the words "as long as the parents of Calvin were alive"), the parents of Calvin would leave to her Calvin's share of the estate at the parents' death. This apparent contradiction as to the period for which Mildred was to remain single is a matter of incompleteness of oral testimony rather than conflict in the evidence. It must be remembered that not only was this testimony oral and given by some ten witnesses, but it was presented more than twenty years after the agreement was made. The apparent contradiction is not in the testimony, but in the inference to be drawn from the testimony. It is inferred by appellees that because some of the witnesses testified Mildred was to remain single, while other witnesses said that Mildred was to remain single during the lifetimes of J. E. Wert and Lizzie Wert, the two groups of witnesses were not testifying to the same thing. The apparent difference is due to incompleteness in the evidence of one group of witnesses—a failure to state the full agreement. So far as the testimony of this group went, it did not conflict with the other group's evidence. The first group's testimony failed to add to the words "remain single," the words "as long as we [the parents] live." From the absence of this last phrase in the first mentioned group's evidence, it does not follow that the contract was that Mildred was to remain single during her lifetime. There is no claim of contradiction as to the time when Mildred should take Calvin's share. She was to get it if she were single at the death of the survivor of J. E. Wert and Lizzie Wert. In other words, the title to Calvin's share was to vest in Mildred at the time Calvin would have gotten it, namely, at the death of the survivor of his parents. We find no language in the contract intimating that Mildred should thereafter be divested of the title. If it had been the intent to divest Mildred of title after Lizzie Wert's death in the event Mildred did remarry, it would not have taken a knowledge of technical terms or of legal estates to have stated the substance of such an idea in the agreement. No such thought appears in this record. What were Calvin and his parents attempting to accomplish by this agreement? Calvin wanted his wife Mildred at the

death of his last surviving parent to have the share of their joint estate which he would have had, had he lived until that day. In other words, he wanted Mildred to inherit the same as he would have inherited, provided she were single at the time title was to vest. Had Calvin survived and obtained the property under the law of descents and distribution, title would have vested in him at his mother's death, untrammeled by any conditions upon its enjoyment. Calvin desired Mildred to secure title at the same time and in the same manner he would have gotten it had he survived, provided she had remained single to that time. We have no hesitancy in finding that, in view of the situation of the parties and the purpose it was sought to accomplish, Mildred was to take Calvin's share of the property at his surviving parent's death unrestricted by any provision for divestment of such title by Mildred's subsequent conduct. As we have said, the alleged conflict in the testimony comes from an assumption or inference based upon an incompleteness in the testimony of some of the witnesses and not from any actual contradiction in the testimony itself. The existence of the contract and its terms were clearly established by the evidence and should have been recognized by the trial court. (*Gibbs v. Central Surety & Ins. Corp.*, 163 Kan. 252, 181 P. 2d 498.) The main portion of the contract was to the effect that Mildred, if she was single at the time of the death of the surviving parent of her husband, was to have the absolute ownership of what would have been her husband's share, namely, one-half of the distributive estate of J. E. Wert and Lizzie Wert.

We now come to the question of performance. The principal condition annexed to the vesting of the estate in Mildred was that she should remain single until the death of the surviving parent of her deceased husband. It is stipulated in the record that she has complied with this condition.

The only matter remaining is the statement of the parents, as testified to by some witnesses, that Mildred was to be as good to them in the future as she had been in the past. There is no evidence in the record that she was not. Calvin's parents had never complained of her conduct and apparently were fully satisfied with her treatment of them. It cannot now be successfully urged that she has not performed this condition, if it existed. (*Smith v. Cameron*, 92 Kan. 652, 141 Pac. 596; *Smith v. McHenry*, 111 Kan. 659, 207 Pac. 1108).

Where the existence of a contract and its performance have been

established, this court may direct judgment without remanding the cause for retrial. (*Harmon v. Coonrod,* 148 Kan. 146; 79 P. 2d 831, and the authorities therein cited.)

Clearly, the present cases present instances for the application of that rule. There is nothing left for the trial court to find either in the matter of the existence of the contract, or its terms or performance hereof. Mildred Wert is entitled to receive, as of the date of Lizzie Wert's death, one-half of the distributive estates of J. E. Wert and Lizzie Wert, deceased.

The judgments of the district court are reversed, with directions to enter judgments in conformity with this opinion.