E. T. WEBB v. FRANK ROCKEFELLER.

No. 12,885.   (71 Pac. 283.)

SYLLABUS BY THE COURT.

1. TRUSTS AND TRUSTEES—*Deed Construed—Case Followed.* When land is conveyed to a trustee, his heirs and assigns, for the benefit of a third person named in the deed as beneficiary, but the conveyance contains no clause in restraint of alienation, the title of the trustee is not nominal only, but the trustee in such conveyance has the power of disposition, and the trust is not executed by the statute of uses. The case of *Boyer v. Sims*, 61 Kan. 593, 60 Pac. 309, followed.

2. CORPORATIONS—*Conveyance to Director—Collateral Attack.* While the rule is that a conveyance of the corporate property of an insolvent corporation to a member of the board of its directors will be carefully examined and readily avoided in an appropriate action brought by the proper parties in interest for the purpose of setting it aside, yet such conveyance, based upon full consideration paid, in the absence of actual fraud, is not void, and will not be so declared in a collateral attachment proceeding brought by a creditor of the corporation to subject the property thus conveyed to the payment of a corporate debt.

Error from Meade district court; E. H. MADISON, judge.   Opinion filed January 10, 1903.   Affirmed.

*H. W. Currey*, and *F. C. Price*, for plaintiff in error.

*Gage, Ladd & Small*, for defendant in error.

The opinion of the court was delivered by

POLLOCK, J.: Frank Siegel and the Siegel-Sanders Live-stock Commission Company, a Missouri corporation, were largely indebted to plaintiff in error.

Frank Siegel and defendant in error were directors in the corporation, which was insolvent. On the 23d day of April, 1901, Frank Siegel, the owner of the land in controversy in this case, and other lands, and very heavily indebted to the corporation, executed and delivered a conveyance, which, omitting the description of the property, reads :

"This indenture, made this 23d day of April, A. D. 1901, between Frank Siegel, of Jackson county, in the state of Missouri, of the first part, and R. D. Swain, trustee for the Siegel-Sanders Live-stock Commission Company, of Jackson county, in the state of Missouri, of the second part,

"Witnesseth, that said party of the first part, in consideration of the sum of ten thousand ($10,000), the receipt of which is hereby acknowledged, does by these presents remise, release and quitclaim unto said party of the second part, his heirs and assigns, all the following-described real estate, situate in the county of Meade and state of Kansas, to wit : (Description omitted.)

"To have and to hold the same, together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging, or in any wise appertaining, forever.

"In witness whereof, the said party of the first part has hereunto set his hand, the day and year first above written.                    FRANK SIEGEL."

On the 9th day of May, 1901, at a special meeting of the board of directors of the corporation, the following resolution was adopted :

"On motion of N. B. Carskadon, duly seconded, the said R. D. Swain, as trustee, for the use and benefit of this company, was instructed to convey, by good and sufficient deed, to Frank Rockefeller, all the lands held by him as such trustee in Meade county, Kansas, being the lands conveyed to said Swain, as trustee for the company, by Frank Siegel, by quitclaim deed

11—66 KAN.

dated the 23d day of April, 1901, and containing about 2400 acres, at and for the sum of $6000, he, the said Rockefeller, having offered to purchase the same for the said price."

Rockefeller was present and acted as chairman of this directors' meeting, but did not vote upon the adoption of the above resolution. On the succeeding day the following conveyance was executed and delivered to Rockefeller :

"This indenture, made this 10th day of May, 1901, between R. D. Swain, trustee for the use and benefit of the Siegel-Sanders Live-stock Commission Company, a corporation, of Jackson county, Missouri, party of the first part, and Frank Rockefeller, a resident of Cuyahoga county, Ohio, party of the second part,

"Witnesseth, that said party of the first part, in consideration of the sum of six thousand dollars ($6000), does, by these presents, remise, release and quitclaim unto said party of the second part, his heirs and assigns, all the following-described real estate, situated in the county of Meade, state of Kansas, to wit: (Description omitted.)

"To have and to hold the same, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining forever.

"In witness whereof, said party of the first part has hereunto set his hand, the day and year first above written.                    R. D. Swain, *Trustee*."

At this time, in payment for this and other property conveyed, Rockefeller paid the corporation the sum of $16,500 in cash. On the 20th day of May thereafter Webb attached the land in question as the property of Frank Siegel and the Siegel-Sanders Live-stock Commission Company. Upon motion filed by Rockefeller the property was discharged from the lien of

the attachment.   To reverse this order this proceeding in error is prosecuted.

The first and principal claim of error urged by counsel is that the deed from Siegel to Swain, as trustee for the corporation, conveyed to the trustee a mere nominal title only, with no power in the trustee of alienation of the property, and, as a consequence, the statute of uses executed the trust, the title vested in the corporation, the beneficiary of the trust, and the deed is void as to the trustee.

Many decisions from other jurisdictions are cited in support of this contention.   The statute reads :

"A conveyance or devise of lands to a trustee whose title is nominal only, and who has no power of disposition or management of such lands, is void as to the trustee, and shall be deemed a direct conveyance or devise to the beneficiary."   (Gen. Stat. 1901, ch. 114, § 13.)

This statute received the consideration of this court in the case of *Boyer v. Sims,* 61 Kan. 593, 60 Pac. 309. It was there held :

" When lands are conveyed to the grantees as trustees, 'and to their assigns,' but without naming the beneficiaries or expressing the terms of the trust, the title is not a merely nominal one, or void as to the trustees, but a power of disposition of the trust estate vests in the grantees, and the conveyance cannot be deemed a direct one to the beneficiaries, under section 13, chapter 113, General Statutes of 1897 (Gen. Stat. 1899, § 7531)."

Counsel for plaintiff in error endeavor to distinguish that case from the case at bar in this, that there the conveyance ran to Sims and Kellam, trustees, and to their heirs and assigns.   The beneficiaries of the trust were not named in the deed.   Here the beneficiary is named.   The conveyance is to "R. D. Swain,

trustee for the Siegel-Sanders Live-stock Commission Company, his heirs and *assigns*."

We are unable to perceive any grounds for a legal distinction between the conveyances. The trusts which the statute executes, by the very terms of the statute, are those in which the trustee has no power of disposition. Unless otherwise provided the power of disposition or alienation inheres in every grant. To deprive a trustee in a grant of this power of disposition or alienation the conveyance must contain a clause in restraint of alienation. That this is the ground of the decision in *Boyer v. Sims*, and not the want of the name of the beneficiaries in the conveyance, is apparent from the reasoning of the chief justice in the opinion, in which it was said :

"Of course, the power of alienation is incident to every fee (Tied. Real Prop. § 38), and conveyances of the fee in trust, as well as the fee absolute, carry with them to the grantees a power of alienation, unless restrained by the instrument itself. Under the above statute, in the light of the rule mentioned, the deed in question must have contained a clause in restraint of alienation to enable us to say that the grantees possessed no power to dispose of the premises.

"But the power of disposition was given to the trustees. Independently of the explanatory testimony as to the existence and design of the trust, and admitting that such testimony may have been improperly received (although no objection was made to it on the trial or in argument to us), the conveyance itself implies a power of disposition. It was made to the grantees and 'their heirs and *assigns*.' The trust was not a naked one. By the granting and *habendum* clauses of the conveyance, without reference to the general rule of right to alienate, a power of disposition was vested in the trustees, and that, by the terms of the statute, was sufficient to constitute an active trust."

It follows that the case must be held controlling here and decisive of the point.

Again, it is contended that the statutes of Missouri, the home of the corporation, prescribe the manner in which conveyances of corporate property shall be executed, and, as the method of conveyance prescribed by the law was not employed here, the conveyance to defendant in error must fail. What weight, if any, might be attached to this argument, if, as contended, the statute of uses operated upon, and executed, this trust, need not be considered in the view we take of that question. The conveyance here is not from the corporation to defendant in error, but is from Swain, trustee, holding the alienable title in trust for the corporation, and was properly executed by the trustee.

Finally, it is contended that as Rockefeller was a member of the board of directors of the corporation he occupied such a fiduciary relation to the corporation, its shareholders and creditors, as precluded him from dealing with the corporation for its corporate property, upon the familiar ground that the law will not permit a trustee to purchase at his own sale. Hence, it is urged that the conveyance must be held void and the property subject to seizure in attachment by a corporate creditor. It will be remembered that defendant in error did not vote upon the adoption of the resolution authorizing the sale to him. In consideration of the conveyance he paid to the corporation the sum of $6000. It is not contended but that this sum was the fair value of the property. No actual fraud in the transaction is asserted. Fraud in law alone is claimed. This proceeding is by attachment. The attack made upon the conveyance is purely collateral. That plaintiff may prevail it must be held that the conveyance attacked is not voidable alone, but absolutely null and void. It will thus be seen

that we are not here considering, or concerned with, the principles of equity which would control our action in a direct proceeding by the shareholders, the beneficiaries of the corporate property, or others entitled to maintain such proceeding, brought to avoid the conveyance, for in such action all the equities of the parties would be investigated and decreed. But such is not this case. Here we are urged, in a collateral action at law in attachment, under the statute, to declare this conveyance absolutely null and void. This cannot be done.

Mr. Justice Miller, in *Twin-Lick Oil Co. v. Marbury*, 91 U. S. 587, 23 L. Ed. 328, said:

"That a director of a joint-stock corporation occupies one of those fiduciary relations where his dealings with the subject-matter of his trust or agency, and with the beneficiary or party whose interest is confided to his care, is viewed with jealousy by the courts, and may be set aside on slight grounds, is a doctrine founded on the soundest morality, and which has received the clearest recognition in this court and in others. *Koehler v. Black River Falls Iron Co.*, 2 Black, 715, 17 L. Ed. 339; *Drury v. Cross*, 7 Wall. 299, 19 L. Ed. 40; *Luxemburg R. R. Co. v. Maquay*, 25 Beav. 586; *The Cumberland Co. v. Sherman*, 30 Barb. 553; 16 Md. 456, 77 Am. Dec. 311. The general doctrine, however, in regard to contracts of this class is not that they are absolutely void, but that they are voidable at the election of the party whose interest has been so represented by the party claiming under it. We say, this is the general rule; for there may be cases where such contracts would be void *ab initio;* as when an agent to sell buys of himself, and by his power of attorney conveys to himself that which he was authorized to sell. But, even here, acts which amount to a ratification by the principal may validate the sale.

"The present case is not one of that class. While it is true that the defendant, as a director of the corporation, was bound by all those rules of conscientious

fairness which courts of equity have imposed as the guides for dealing in such cases, it cannot be maintained that any rule forbids one director among several from loaning money to the corporation when the money is needed, and the transaction is open, and otherwise free from blame. No adjudged case has gone so far as this. Such a doctrine, while it would afford little protection to the corporation against actual fraud or oppression, would deprive it of the aid of those most interested in giving aid judiciously, and best qualified to judge of the necessity of that aid, and of the extent to which it may safely be given.''

Mr. Thompson, in his work on Corporations, section 4070, says :

''The principle which upholds contracts, when fairly made, between a corporation and its directors or officers, allows them, under like conditions, to purchase property from the corporation. Such purchases are not void at law, but are only voidable in equity ; and when the purchasing director is guilty of no fraud or concealment, and pays the value of the property, and it is the intention of the directors to sell to him, equity will uphold the sale.''

Many authorities might be cited in support of the distinction made. It is unnecessary. The rule that conveyances of the character here considered shall receive the closest scrutiny, and never in cases of doubt be upheld when attacked in a proper proceeding, is a salutary one, and should not be departed from, but such conveyances, save in exceptional cases, are not absolutely void and subject to collateral attack, but voidable only in a direct proceeding.

Other errors are assigned. We have examined them and find that they are not well taken.

It follows that the order made discharging the property from the lien of attachment must be sustained.

All the Justices concurring.