No. 29,189.

SOPHRONIA A. BROWN, *Appellant,* v. G. F. PARMALEE et al., *Defendants;* SAMUEL J. BROWN, *Appellee.*

(285 Pac. 563.)

Opinion filed March 8, 1930.

*N. A. Yeager, R. A. Cox,* both of Augusta, *L. P. Brooks, L. A. Hasty* and *James B. Nash,* all of Wichita, for the appellant.

*W. R. Glass,* of Wichita, and *J. B. McKay,* of El Dorado, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: This was an action to quiet title. Plaintiff filed a petition which set forth the usual general allegations and in reply thereto the defendant, Samuel J. Brown, filed an answer and cross petition pleading, in substance, a general denial and alleging that he was the owner of a one-fourth interest in the real estate described in plaintiff's petition and a one-fourth interest in the sum of $5,000 condemnation money which had been paid to the defendant county treasurer by the Atchison, Topeka & Santa Fe Railway Company in certain condemnation proceedings in which a portion of the lands was taken by the railroad. He further alleged that since 1921 (that being the year in which he obtained title to an undivided one-fourth interest in the lands) the plaintiff had collected all rents and profits therefrom and that defendant was entitled to an accounting of his one-fourth share therein. He also asked judgment for one-fourth of an amount of money received by the plaintiff as the proceeds of an insurance policy which she had collected as a result of a fire which burned one of the buildings on the lands since he had acquired a one-fourth interest therein. He further prayed the court that he be adjudged the owner of an undivided one-fourth interest in said lands and that a decree of partition be entered.

The defendant Guarantee Title and Trust Company answered that it was the owner of an undivided one-fourth interest in said property and asked that its rights be protected and that it be given such relief as the court might deem proper.

The plaintiff filed reply to the answer and cross petition of the defendant Samuel J. Brown. A large portion of this reply was ordered stricken out by the court on a motion to strike which was filed by the defendant Samuel J. Brown. No appeal was taken from this order on the motion to strike within six months, but in the reply the general denial and allegations of the source of plaintiff's title, the allegation as to adverse possession and the death of Jonathan W. Brown were permitted to stand. Upon the foregoing issues the case proceeded to trial. The court made findings of fact and conclusions of law which are quite voluminous. We shall endeavor to set forth the substance of these findings.

For many years prior to 1918 Jonathan W. Brown was the owner of the lands in controversy. In the early part of June, 1918, T. C. Johnson and R. J. Pryor, who were then engaged in the oil business at Wichita, asked Park E. Salter, who was the son-in-law of Jonathan W. Brown, to ascertain whether they could purchase an interest in the oil and gas rights in the Brown lands so that they could form and promote a syndicate with the Guarantee Title and Trust Company of Wichita acting as trustee. Jonathan W. Brown and his wife, Sophronia A. Brown, plaintiff in this case, then resided on or in the neighborhood of this land. No well for oil or gas was ever drilled on the Brown land, but at the time Johnson and Pryor became interested therein an offset well was being drilled on adjoining land. The son-in-law Salter talked over the matter with the treasurer of the trust company and was informed that the company could not act as trustee unless the real estate was deeded over to the company. Thereafter Salter, at the request of Johnson and Pryor, discussed the matter with Jonathan W. Brown and told him the trust company would demand deed, and Brown orally agreed to accept $15,000 and execute a warranty deed to an undivided one-half interest in the real estate. This was agreeable to Johnson and Pryor. A general warranty deed to an undivided one-half interest in the lands in controversy was executed by Brown and wife to the Guarantee Title and Trust Company, as trustee, dated June 7, 1918. This deed was delivered to Salter and he took it to Wichita, where

it was left in escrow with the trust company on or about June 10, 1918. The deed was placed in an envelope and on the back thereof was indorsed:

"The inclosed deed to be delivered upon payment to you for my account the sum of $20,000 on or before ten days after abstract of title is delivered to you, and to be returned to me if payment is not made by that date; revenue stamps to be deducted from purchase. (Signed) Park E. Salter."

While the agreement provided for payment of $20,000, the actual consideration which was to go to Jonathan W. Brown was $15,000. This escrow agreement was made to call for $20,000 at the request of Johnson and Pryor so that it would appear to the public that the property was being offered for sale at its cost price, but the $5,000 over and above the purchase price, agreed to be paid to Brown, was in fact to belong to Johnson and Pryor. In April, 1918, Brown and wife had placed an oil-and-gas lease on the lands in controversy to one E. E. Johnson. This lease was for a term of six months from July 28, 1918, and the deed to the Guarantee Title and Trust Company was made subject to this oil-and-gas lease.

On or about June 10, 1918, the trust company and Johnson and Pryor executed a trust agreement in writing which was offered in evidence. This agreement was very elaborate in form and recited that Johnson and Pryor had caused an undivided one-half interest in the lands in controversy to be deeded to the Guarantee Title and Trust Company and then set forth a declaration that the trust company would hold the interest in said real estate so deeded to it in trust; would collect all rents and royalties and distribute the same to each beneficiary. It set forth that the unit of ownership should be 20,000 and also set forth a form of certificate of ownership which should be issued to each beneficiary from time to time as the interests were sold; provided for the keeping of a register of the units of interest; provided for the time and manner of distribution of income from the rents and royalties; for payment of state and federal taxes; for semiannual reports to the holders of certificates; for compensation of the trustee; for a committee of owners of certificates to consult with the trustee and that the trustee might resign and turn the trust over and convey the property to such person as a majority in interest of the certificate holders should designate. It provided that the trustee should convey said royalty interest or any part thereof by proper instrument of conveyance upon receiving written authority of a majority in interest of the

beneficiaries to make such transfer or conveyance; that the proceeds from a sale should be distributed in the same manner as set forth for other income and profits accruing to the trustee from the trust property.

After the execution of this trust agreement Johnson sent a copy of the same to Samuel J. Brown, defendant herein, and offered to sell Brown a half interest in the syndicate for $7,500. On July 2, 1918, Johnson and Pryor by letter again offered to sell Brown 10,000 units, which they stated was one-half the interest deeded to the trust company by Jonathan W. Brown, for $7,500, and on July 3, 1918, Brown paid that amount to the trust company. Immediately upon the $7,500 being paid to the trust company and on the same date, Johnson and Pryor and Park E. Salter went to the Guarantee Title and Trust Company and indorsed upon the envelope containing the deed which had previously been placed in escrow under the agreement above set forth, the following:

"Guarantee Title and Trust Company:

"You are instructed to deliver $7,500 paid to you on within escrow to Park E. Salter and record the warranty deed. July 3, 1918.

(Signed) PRYOR AND JOHNSON.
By T. C. JOHNSON,
PARK E. SALTER."

There was also indorsed on the envelope: "July 3, 1918, received the above $7,500. Park E. Salter."

The trust company did not record the deed until July 24, 1918. On July 23, 1918, they received a letter from Samuel J. Brown in which he notified the company that the title had been found defective, without specifying in what manner, and that he had never accepted the proposal made to him, and notified the trust company not to pay over the $7,500 paid in by him.

No one ever sent to Samuel J. Brown any units as provided for in the trust agreement. On January 7, 1919, he filed action in the United States district court at Wichita against Pryor and Johnson, Salter and Jonathan W. Brown in which he claimed that they had fraudulently obtained $7,500 from him, and asked for judgment against them for that amount. This action terminated in favor of the defendants.

Jonathan W. Brown died intestate the early part of October, 1922, and left surviving him his widow, plaintiff herein, two sons and two daughters. On October 5, 1922, the sons and daughters conveyed

all their interest in the land to the mother, the plaintiff herein. When Samuel J. Brown paid his money to the trust company he had a copy of the trust agreement between that company and Johnson and Pryor. There was no agreement or understanding between the trust company and Jonathan W. Brown that the company should hold the real estate or any interest therein for Jonathan W. Brown or for his use or benefit. The only agreement with Jonathan W. Brown was the escrow memorandum hereinbefore set forth. The court found that about the time Samuel J. Brown paid the money to the trust company, the offset well hereinbefore referred to was completed as a dry hole and that Samuel J. Brown was the only one who ever paid any money to the trust company or purchased any interest in the real estate or the oil and gas rights therein.

On April 4, 1921, the Guarantee Title and Trust Company by special warranty deed conveyed an undivided one-fourth interest in the real estate to the defendant and on April 23, 1921, Pryor and Johnson conveyed to him a like interest by quitclaim deed. Jonathan W. Brown was in the exclusive possession of said real estate up to the time of his death, and Sophronia A. Brown, the plaintiff, was in exclusive possession subsequent to the death of her husband, paying all taxes and receiving all rents and profits therefrom, but neither Jonathan W. Brown nor Sophronia A. Brown ever questioned or disputed the right or title of Samuel J. Brown to a one-fourth interest in the real estate until about the time of the beginning of this suit.

The court concluded as a matter of law that plaintiff was the owner of an undivided three-fourths interest in the real estate in controversy and the defendant Samuel J. Brown was the owner of an undivided one-fourth interest therein; that plaintiff should be held to account to the defendant for a one-fourth portion of the net rents and profits for the years 1925, 1926, 1927, 1928 and for any other rents and profits that might be paid or due in 1929 or thereafter; that the county treasurer pay three-fourths of the $5,000 money in his hands to the plaintiff and one-fourth thereof to Samuel J. Brown; that the plaintiff and the defendant Samuel J. Brown are entitled to judgment quieting their titles in the proportion above determined, and that the real estate should be partitioned subject to the right of way of the railroad company.

Before taking up the various points urged by the appellant as specifications of error we deem it advisable to dispose of one raised

by the appellee. The appellee contends that all of the questions now raised by the appellant were disposed of by the court sustaining a motion to strike numerous allegations from the reply of plaintiff to the answer and cross petition of Samuel J. Brown. It is true that the court did strike out a great portion of this answer and no appeal was taken from that order. The appellee now contends that the ruling of the court on the motion to strike settled all the points raised in this appeal. This is not true. The petition and the general denial which was allowed to stand in the reply joined issue to the answer of the defendant. The reply was verified. Striking out certain portions of the reply did not dispose of all the issues. The question of the interests of the plaintiff and the defendant remained to be determined, and under the general denial in her reply the plaintiff had the right to introduce such competent evidence as would disprove the title of the defendant. We hold that the ruling on the motion to strike from the reply did not dispose of the issues in this case.

The appellant urges the following claims for a reversal:

(1) That the evidence failed to show legal or equitable title in Samuel J. Brown, the appellee.

(2) That no authorized delivery of the deed from Jonathan W. Brown to the Guarantee Title and Trust Company was ever made and that it never became operative.

(3) That it was the intention of the parties to the deed that it conveyed only the royalty interest of the grantor under an existing lease and that parol evidence is admissible to show the true character of the transaction.

(4) That his election to rescind and the judgment in the federal court estop the appellee from relitigating the same transaction in this case and is *res judicata*.

(5) That under the evidence, pleadings and findings the appellant should recover and is entitled to judgment as prayed for in her petition.

We shall discuss the first two points together. Taking up the question that there was no authority to deliver the deed from Jonathan W. Brown to the Guarantee Title and Trust Company, the findings of the court, which are supported by ample evidence, show that Salter, acting as the agent of Jonathan W. Brown, was told by the treasurer of the trust company that the only way they could handle the matter was by having the land deeded to the trust

company. Following this, Salter went to Jonathan W. Brown and wife and they agreed to deed over an undivided one-half interest in the land and to accept therefor $15,000. They executed a general warranty deed to an undivided one-half interest in the land, naming the Guarantee Title and Trust Company, trustee, as the grantee. This deed was placed in the care of Salter as their agent and he took it to the trust company and there placed it in escrow under the escrow memorandum hereinbefore set out. The escrow memorandum made the $15,000 which Jonathan W. Brown agreed to take for his deed payable to the account of Park E. Salter. Subsequently, and on July 3, 1918, and at a time when the evidence shows that the test well on the adjoining lands had been proven dry, the $7,500 was paid to the Guaranty Title and Trust Company by the defendant Samuel J. Brown, and the parties Johnson and Pryor and Park E. Salter went to the trust company and drew down the $7,500, which was paid over to Salter for Jonathan W. Brown, and on that occasion the additional memorandum was made by Salter authorizing the trust company to proceed to record the deed. No contention is made in the record that Jonathan W. Brown did not receive the $7,500, nor that Salter did not have authority to draw down the $7,500 for Brown. The contention is rather that the alleged escrow memorandum having been made on the basis that Brown was to receive the $15,000 through Salter, there could be no valid delivery of the deed unless the full $15,000 was paid. The authority to record the deed was given by Salter on July 3, 1918. The trust company did not act under this authority until July 24, allowing twenty-one days to elapse before exercising the authority so granted to it. Then from July 24, 1918, the date this deed was placed on record, nothing further was done until the suit was filed in the federal court by Samuel J. Brown against Pryor, Johnson, Salter and Jonathan W. Brown. At that time Jonathan W. Brown had knowledge of everything which was charged in the action in the federal court. In that action he was charged as one of the parties to a conspiracy on the part of the defendants. The petition alleged that he was owner of the fee of said tract of land and entered into a conspiracy to defraud the plaintiff, and it was charged that Jonathan W. Brown conveyed an interest in said land to the Guarantee Title and Trust Company and that this company had paid over the $7,500 to the defendants for division among them. The original action was filed in the federal court in January, 1919. The amended petition upon which it was

tried and which was offered in evidence was filed November 6, 1919. The case went to judgment in the federal court on November 17, 1921. Jonathan W. Brown did not die until October, 1922, but in all of this time he did nothing to repudiate the actions of his agent Salter. On the contrary, he accepted the $7,500 and retained the benefits of the transaction. Furthermore, the deed to Samuel J. Brown from the Guarantee Title and Trust Company, dated April 4, 1921, and the deed from Johnson and Pryor to Samuel J. Brown, obtained April 23, 1921, were both placed on record in Butler county December 24, 1924. The action in this case was not instituted by the plaintiff until the latter part of 1927.

A principal will be presumed to have ratified his agent's acts unless he repudiates the action within a reasonable time after the essential facts in regard thereto have come to his knowledge. In the case *Hartwell v. Manufacturing Co.*, 78 Kan. 259, 97 Pac. 432, the court said:

"It is trite law that where one, without authority, assumes to act as the agent of another in making a contract, the principal must repudiate the transaction within a reasonable time after all the material facts in regard thereto have come to his knowledge or he will be presumed to have ratified the contract." (p. 263.)

It is also the law that the acceptance of benefits under a contract by the principal estops him to deny the authority of his agent. In *Nation v. Clay*, 125 Kan. 735, 266 Pac. 45, the court said:

"Whatever the law of Missouri may be as to the power of a private corporation to act as agent for others, it is clear that defendants should not be permitted to contest the agency after they have received the benefits of the contract procured by the agent, and where full performance has been made by the other party. The acceptance of the benefits of the contract was really a ratification of the contract as made."

See, also, *Ehrsam v. Mahan*, 52 Kan. 245, 34 Pac. 800; *Bank of Lakin v. National Bank*, 57 Kan. 183, 45 Pac. 587.

In *Aultman v. Knoll*, 71 Kan. 109, 79 Pac. 1074, it was held that a principal cannot appropriate to himself all of the advantages of his agent's unauthorized act and at the same time repudiate its obligations. Ratification must include the entire act. (See, also, *Petroleum Co. v. Gas & Fuel Co.*, 112 Kan. 73, 209 Pac. 826.)

We hold that Jonathan W. Brown accepted the benefits of his agent Salter's acts; that there was never any attempt on the part of him or his widow, the plaintiff in this case, to repudiate said acts, and that all the acts of Salter have long since been ratified and

adopted by them as their acts. Furthermore, under the facts found by the court, we also hold that the plaintiff is estopped from at this time raising any question as to a lack of authority on the part of Salter to authorize the delivery of the deed. As argued by the appellee, it is apparent that Jonathan W. Brown received the $7,500 and knew from whence it came; that he could not expect to accept and retain this $7,500 and give nothing in return therefor; that the only source from which the person who paid in the $7,500 could obtain anything was through the deed which Jonathan W. Brown had made to the trust company, and he therefore must have intended that the deed be delivered. In *Hoard v. Jones,* 119 Kan. 138, 237 Pac. 888, the court quoted with approval from a former decision, *Rohr v. Alexander,* 57 Kan. 381, 46 Pac. 699, as follows:

"The possession by a grantee of a deed, purporting to convey said real estate, duly executed and acknowledged, and which is absolute in form, is *prima facie* evidence of a delivery which can be overthrown only by clear and convincing evidence." (Syl. ¶ 1.)

(See, also, *Balin v. Osoba,* 76 Kan. 234, 91 Pac. 57; *Smith v. Dolman,* 120 Kan. 283, 243 Pac. 323.)

As to the contention that the evidence failed to show any legal or equitable title in Samuel J. Brown it must be noted that the deed given to the Guarantee Title and Trust Company as trustee by Jonathan W. Brown and wife did not contain any restrictions on the power of disposition or alienation; the trust company therefore had the power to make a valid deed. In *Webb v. Rockefeller,* 66 Kan. 160, 71 Pac. 283, the court said:

"Unless otherwise provided the power of disposition or alienation inheres in every grant. To deprive a trustee in a grant of this power of disposition or alienation the conveyance must contain a clause in restraint of alienation." (p. 164.)

The deed from Jonathan W. Brown to the trust company was followed by the execution of the declaration of trust between the trust company and Johnson and Pryor, in which it was recited that Johnson and Pryor "have caused to be executed a warranty deed to the undersigned Guarantee Title and Trust Company." Jonathan W. Brown was not a party to this trust agreement. He had no interest in the declaration of trust. His only interest was that he get paid for his deed. The plaintiff in this case is therefore in no position to complain of the subsequent acts of the trustee and Johnson and Pryor in deeding over to Samuel J. Brown the interest which he had

purchased, namely, an undivided one-fourth interest in the lands. No one other than the defendant Samuel J. Brown had purchased any interest under the grant given to the trust company. He had purchased a one-fourth interest, or one-half of the interest conveyed by Jonathan W. Brown to the trust company. As to the question of what evidence of title should be given Samuel J. Brown, the only parties concerned were Samuel J. Brown, the trust company and Johnson and Pryor. The original beneficiaries of the entire interest under the trust agreement were Johnson and Pryor. They in turn sold one-half of their interest to Samuel J. Brown. He thereby became a beneficiary *pro tanto*. They had a right to quit-claim their interest and the trust company had a right to convey to Samuel J. Brown the interest which he had purchased. Under these circumstances the plaintiff, being a stranger to the trust agreement and having received the benefits of the money paid by Samuel J. Brown, is in no position to complain of the conveyance by the trust company and Johnson and Pryor of the one-fourth interest to Samuel J. Brown. (See *Mallory v. Thomas,* 71 Kan. 562, 81 Pac. 194.)

The appellant further contends that parol evidence was admissible to show the true character of the action and to show that it was the intention of the parties to the deed that it conveyed only a royalty interest of the grantor under the existing oil-and-gas lease. The deed to the trust company was a general warranty deed for an undivided one-half interest in the land. The parties could very well have made a royalty conveyance conveying only an undivided one-half interest in the oil-and-gas lease, but the court specifically found under the evidence in its third finding that Salter discussed the matter with the treasurer of the trust company and the treasurer informed Salter that the trust company could not act as trustee unless the real estate was deeded to the trust company. Salter discussed the matter with Jonathan W. Brown and told him that the trust company would demand a deed, and Brown then orally agreed to accept $15,000 and execute a warranty deed to an undivided one-half interest in the real estate. It was not competent for the plaintiff to attempt to show by parol testimony that the warranty deed was something different from what it appeared to be on its face.

In *Miller v. Miller,* 91 Kan. 1, 136 Pac. 953, it was held that parol evidence is inadmissible to contradict, vary, change or restrict the

terms of a valid deed. The plain provisions of the warranty deed could not be changed to make a conveyance of only an undivided one-half interest in the oil and gas rights by parol testimony. If Jonathan W. Brown wanted to make that kind of a deal—if it was his intention to sell only an undivided one-half interest in the oil and gas rights on his land—then he should not have agreed to give a warranty deed. There was a plain and simple method by which such an intention could have been carried out, but it was not carried out by the giving of a warranty deed, and the well-established parol evidence rule will not permit the plaintiff, his successor in title, to come in now and assert that the warranty deed was intended only to be a grant of an undivided one-half interest in the oil and gas rights. Other cases bearing upon the fact that parol testimony cannot be admitted for the purpose desired by the plaintiff are: *Brenn v. Insurance Co.* 103 Kan. 517, 175 Pac. 383; *Hazelton v. Chaffin,* 109 Kan. 175, 197 Pac. 870; *Manchester State Bank v. Elmo Farmers Union,* 119 Kan. 835, 241 Pac. 118.

The appellant contends that the action brought by Samuel J. Brown in the federal court was an election on his part to rescind and that he is now estopped from relitigating the same action in this court and that the trial in the federal court is *res judicata* as to the claim of title made by the appellee in this case. In the action in the federal court the appellee sought to obtain damages on account of fraud. He failed in that action. Can it then be said that because he failed to obtain damages for fraud and misrepresentation charged to have been made concerning the value of the thing he bought, that as a result of the outcome of that trial he actually lost the thing which he had purchased? This is not true. The only issue litigated in the federal court case was the question of whether or not plaintiff had been damaged by reason of the fraudulent contentions on the part of the defendants. The question of his title or lack of title to the lands was not in issue there and was not litigated. His attempted rescission was not completed. Of course, if he had obtained judgment against the defendants and been restored he could not get his money back and still claim title, but inasmuch as he failed in that action there is no bar to his now claiming title here.

In *McDowell v. Gibson,* 58 Kan. 607, 50 Pac. 870, the court again defined the essentials which had previously been determined in other decisions of this court, as necessary to sustain a plea of *res judicata.* At page 608 the court said:

"It is said that to sustain a plea of *res judicata* there must be a concurrence of four conditions: First, identity in the thing sued for; second, identity of the cause of action; third, identity of persons and parties to the action; fourth, identity of the quality in the persons for or against whom the claim is made."

Applying these tests to the judgment in the federal court action, we do not find that it is *res judicata* to the right of the appellee to assert title in this action.

We find no error in the decision of the trial court. The judgment is affirmed.