No. 31,786

W. R. PHIPPS and L. A. RAMSAY, *Appellees,* v. UNION STOCK YARDS NATIONAL BANK, *Appellant.*

(34 P. 2d 561.)

Opinion filed July 7, 1934.

C. H. Brooks, Willard Brooks, Howard T. Fleeson, F. W. Aley and Carl G. Tebbe, all of Wichita, for the appellant.

A. M. Ebright and P. K. Smith, both of Wichita, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: W. R. Phipps and L. A. Ramsay sued the Union Stock Yards National Bank for the conversion of certain stock pledged to defendant upon a note and a long series of renewals thereof. They charged that the bank sold the stock at a time when they had complied with the formalities in accordance with the form of the notes. It was alleged that in May, 1933, Phipps and Ramsay executed and delivered to the defendant their note for the sum of $4,500, due June 14, 1933, with interest after maturity at ten per cent per annum. That when the note was executed and delivered, on May 16, plaintiff herein deposited with the defendant bank 2,000 shares of stock of a certain gas corporation as security for the payment of the note. A copy of the note follows:

"$4500.00 WICHITA, KANSAS, May 16, 1933.

"June 14, 1933, after date, without grace, for value received, I promise to pay to The Union Stock Yards National Bank, Wichita, Kansas, or order, forty-five hundred and no/100 dollars at the Union Stock Yards National Bank, Wichita, Kan., with interest after maturity at ten per cent per annum until paid. Also ten per cent attorney's fees additional if placed in the hands of an attorney for collection.

"The makers and indorsers hereof severally waive presentment, demand, protest, and notice of protest and nonpayment in case this note is not paid at maturity.

P. O. Wichita, Kansas. (Sgd) W. R. PHIPPS.
Due June 14, 1933. (Sgd) L. A. RAMSAY."
No. 26656.

In their petition plaintiffs state that on May 29 the bank wrongfully and contrary to the provisions of the note, without notice or consent of plaintiffs, sold the 2,000 shares of stock deposited with it as collateral security for two and three-eighths dollars per share, or a total of $4,750. Plaintiffs state that the only indebtedness owing by them to the defendant was the $4,500 note attached hereto. They state that the market value of the stock between the dates of May 29, 1933, and June 14, 1933, was considerably more than the principal amount due on said note. That the market value of said stock fluctuated from time to time, and the highest market value was four and three-fourths dollars per share, and the plaintiffs are

entitled to damages for the wrongful conversion, being the difference between the sale price and the fair and reasonable market value of four and three-fourths dollars per share, the highest market value.

There is attached to the note a stipulation that securities are left with the holder with the right to require from the makers of the note a margin of securities satisfactory to the holder and if they fail to comply with the demand of the holder, it shall have the option to regard the debt as immediately due notwithstanding any credit or time alleged in any instrument evidencing the liability, and a sale may then be made without notice to the maker and the result applied to the liability.

The defendant filed an answer consisting of a general denial of the allegations of plaintiff, except such as are expressly admitted by defendant. It was further alleged, in paragraph two of the answer, that the note in question was executed and delivered as the last renewal note of a series of renewal notes which began October 1, 1931, when the plaintiff purchased the 1,600 shares of the stock in question, at about $3.14 per share, with the money borrowed from defendant, and the note then given was for $4,959.85, being the amount of the purchase price of the shares of stock being pledged as collateral security. On October 3, 1931, plaintiffs purchased 400 more shares of stock on the same basis, thereby increasing the loan and giving a note for $6,326.95. It then recited that:

"This loan was made upon the oral agreement between plaintiffs and defendant that the defendant would carry the said speculation of the plaintiffs for a period of six months on a series of short-term notes, at the end of which time the plaintiffs were to take their profit or loss and to close the account. The result was a series of notes on the same printed form as that set out in the plaintiffs' petition, and containing the same terms except as hereinafter indicated, as follows:"

There was a further allegation in the third paragraph of the answer that at the renewal of April 2, 1932, the value of the capital stock had gone down so low that it represented only a fraction of the amount of the note, and at that time plaintiffs assured the defendant that they were "broke," and the only hope of collecting the debt was through the possible rise in the value of the stock. These representations and assurances were repeated by plaintiff at each subsequent renewal. The national bank examiner thereafter continued to criticize the note and insisted that it be taken out of the assets of the bank. The defendant thereafter unwillingly accepted

renewals for the sole purpose of avoiding the bad appearance of an overdue note in its assets. A selling order was made in 1933 and a sale made under it for the price named, and the net receipts were applied on the note, in the amount of $4,490.26.

Plaintiffs then moved the court to strike from the answer, first the quoted part of the second defense commencing with, "This loan was made," etc., and stating as grounds for the motion that defendants. were attempting to allege an oral agreement made prior to the making of the note sued on and thus vary the terms of the written note, as such testimony would be incompetent and tended to vary the terms of the written instrument. And also to strike the first six lines of paragraph three of the answer which had been stated, as it tended to vary and modify the terms of the written note sued on and such testimony would be incompetent, irrelevant and immaterial. The motion to strike was sustained by the court, and the defendant has appealed from that ruling.

The answer takes in the entire transaction from the original one, which embraced the requirement to keep a margin of security satisfactory to the defendant bank. The renewals, as the answer alleges, were made under an oral authority by conduct and acquiescence for a considerable time, and there had been a sale order in the hands of brokers for months.

The contention of the defendant is, that the oral and parol authority might bar such evidence unless defendant should show that it was a collateral matter, one such as might naturally and normally be handled and arranged for outside of the written instrument.

This subject was considered in a case where a complete and unambiguous contract was made for the sale of lots on which a hotel stood, and made no reference to a sale of furniture in the building. The vendee sought to recover possession of the furniture, and offered parol evidence of conversations, conduct and circumstances, tending to show that the written instrument was not intended to be exclusive evidence of the entire transaction, but was intended to reach only a sale of real estate. It was held by this court (*Brown v. Oliver*, 123 Kan. 711, 256 Pac. 1008), citing 5 Wigmore on Evidence, 2d ed., sections 2430 and 2431, that: ·

"The court was authorized to hear parol evidence of conversations, conduct, and circumstances, to enable it to determine, as a preliminary matter, whether the parties intended the writing to be limited to a single subject of real estate." (Syl. ¶ 1.)

The parol evidence rule is not a rule of evidence, but of substantive law. Its applicability is for the court to determine, and when the result is reached it is a conclusion of substantive law. (*Ehrsam v. Brown,* 64 Kan. 466, 67 Pac. 867; *Clark v. Townsend,* 96 Kan. 650, 153 Pac. 555; Restatement, Contracts, § 237, Comment a.)

In the Restatement, Contracts, section 240, Comment 1b, a somewhat similar situation is discussed as follows:

"The justification of the parol-evidence rule is that when parties incorporate an agreement in a writing it is a reasonable assumption that everything included in the bargain is set down in the writing. Though this assumption in most cases conforms to the facts, and the certainty attained by making the rule a general one affords grounds for its existence, there are cases where it is so natural to make a separate agreement, frequently oral, in regard to the same subject matter, that the parol-evidence rule does not deny effect to the collateral agreement. This situation is especially likely to arise when the writing is of a formal character and does not so readily lend itself to the inclusion of the whole agreement as a writing which is not limited by law or custom to a particular form. Thus, agreements collateral to a negotiable instrument if incorporated in it might destroy its negotiability, and in any event would deprive it of the simplicity of form characteristic of negotiable paper. So in connection with leases and other conveyances, collateral agreements relating to the same subject matter have been held enforceable. These illustrations of what agreements 'might naturally be made' without inclusion in an integrated contract are not exclusive. It is not essential that a particular provision would always or even usually be made in a separate collateral agreement. It is enough that making such a provision in that way is not so exceptional as to be odd or unnatural."

Following these authorities, the trial court can consider the whole transaction from the beginning, including conversations, conduct and circumstances, set forth in the answer, and if the intention of the parties upon the question of fact as to the sale of corporate stock appears to be a natural adjustment, it would be one that is controlling. In *Brown v. Oliver,* supra, it was said:

". . . Was it the intention of the parties to limit the writing to that single subject of negotiation? If so, the other subject of negotiation resting in parol could be proved by parol, and intention was a question of fact, to be determined by investigating conversations, conduct and circumstances. . . ." (p. 712.)

The authorities cited by the plaintiffs are distinguishable and not in line with the ruling on the question presented on the motion to strike. The ruling striking out the oral authority as set forth in the answer is reversed, and the cause is remanded for a new trial.