No. 39,522

In the Matter of the Estate of Katherine E. Hupp, Deceased; SARAH E. DILLMAN and LOUISE PROUTY, *Petitioners* and *Appellants*, v. L. J. NELSON, Executor of the Estate of Katherine E. Hupp, Deceased; LOUIS SPANGLER and EDWIN O. PETERS, *Respondents* and *Appellees*.

(277 P. 2d 618)

Opinion filed December 11, 1954.

*Bernard Peterson* and *J. G. Somers*, both of Newton, argued the cause, and *George A. Robb* and *Forrest A. Wilson*, both of Newton, were with them on the briefs for the appellants.

*Cliff Morgan*, of Newton, argued the cause and was on the briefs for L. J. Nelson, Executor, appellee; *Lelus B. Brown*, of Newton argued the cause and was on the briefs for Louis Spangler, appellee, and *J. Rodney Stone*, of Newton, argued the cause and was on the briefs for Edwin O. Peters, appellee.

The opinion of the court was delivered by

Price, J.: This case had its origin as a demand against the estate of Katherine E. Hupp, deceased. It was disallowed by both the probate and district courts, and claimants have appealed.

Frank S. Hupp, the son of pioneer parents, a resident of Harvey County, died intestate on June 28, 1948. His heirs-at-law were one brother, George Walter Hupp, age 74, and four sisters, Abbie Parrott, age 68, Sarah E. Dillman, age 71, Louise Prouty, age 70, and Katherine E. Hupp. The latter's age is not shown, but she, a spinster, was younger than the others. At the time of his death Frank lived with his sister Katherine on the old Hupp homestead. The latter was appointed administratrix of his estate, which was appraised at $135,470. The estate consisted of some personal property and considerable real estate, including a certain eighty-acre tract near the city of Newton.

Of the five heirs-at-law only two, Sarah and Louise, claimants herein, had children. The former had five and the latter four, they, of course, being nieces and nephews of Katherine.

During the last three years of his life Frank had an employee by the name of Louis Spangler, one of the appellees herein, who worked for him as a hired hand.

Immediately after Frank's death Katherine told her brother and sisters that Frank had expressed the wish that after his death Spangler should have the eighty-acre tract heretofore referred to. A few days later the family gathered at a Newton bank, thinking that perhaps Frank had left a will. None was found, and neither was any deed from Frank to Spangler to the tract in question.

The matter of the heirs deeding the tract to Spangler apparently remained quiescent until the next spring, at which time Katherine again discussed it with her brother and three sisters. George and Abbie, while somewhat reluctant, took the position that if Frank's wishes were that Spangler have the tract they would not stand in the way.

Sarah and Louise were not "convinced," and took the attitude that Spangler did not deserve anything from Frank's estate.

Katherine was insistent, however, in her demand that they deed their undivided interests in the tract to her so that she in turn could deed it to Spangler. After much family discussion on the subject, Sarah and Louise finally agreed to deed their interests in the prop-

erty to Katherine in consideration of the latter's promise to bequeath and devise all of her property to her nieces and nephews—the latter being the children of Sarah and Louise.

On September 17, 1949, George, Abbie, Sarah and Louise executed a warranty deed conveying their interests in the eighty-acre tract to Katherine. It contained the following notation:

"This deed is made in consideration with the division of the property belonging to the estate of Frank S. Hupp, deceased, and no revenue stamps are required."

and was filed for record on October 15, 1949.

On the same day Katherine executed a warranty deed conveying the property to Spangler and his wife, as joint tenants. It contained this notation:

"This is a gift deed and is made to carry out the wishes of Frank S. Hupp, deceased, and no revenue stamps are required."

and was filed for record on November 21, 1949.

Also, on the same date the foregoing deeds were executed, September 17, 1949, George, Abbie, Sarah, Louise and Katherine entered into a written family agreement for the distribution and settlement of Frank's estate. This instrument, after stating that his estate consisted of real estate of the appraised value of $126,585 and personal property appraised at $8,885, making a total value of $135,-470, went on to recite:

". . . that said Frank S. Hupp during his lifetime had expressed the desire that Louis Spangler receive an 80 acre tract from his estate in compensation for his labor and help during the last years of said decedent; that said 80 acre tract was appraised in the sum of $9910.00 which leaves for a division among the undersigned the sum of $125,560.00 and that each is to receive of said appraised valuations the sum of $25,112.00."

In other words, the value of the eighty-acre tract was subtracted from the value of the entire estate and the balance remaining was then divided equally among Frank's five heirs.

The agreement then set out the details of the division to be made among the heirs, and, for all the record shows, such division was completely carried out and no complaint concerning the same is made.

On December 9, 1952, Katherine died, leaving a last will and testament which was executed on the day of her death. It was admitted to probate. Her estate was valued at approximately $100,000. After making bequests and devises to various Baptist institutions and friends, including Louis Spangler and Edwin O. Peters, the

latter being appellees herein, of approximately $40,000, the will named her nine nieces and nephews (they being the children of Sarah and Louise) as residuary legatees and devisees, share and share alike, of the remainder of the estate valued at approximately $60,000.

Thereafter Sarah and Louise filed their claim, in the nature of a demand, against Katherine's estate, setting out the alleged oral agreement with Katherine to the effect that if they would deed over to Katherine their undivided interests in the eighty-acre tract in question, so that Katherine in turn could deed it to Spangler, Katherine would, upon her death, bequeath and devise *all* of her property to her nieces and nephews, they being the children of claimants. Full performance of the agreement on the part of claimants, and breach thereof by Katherine, were alleged, and the prayer was that upon final hearing thereon all property owned by Katherine at the time of her death, subject only to demands having priority and costs of administration, be assigned to and vested in the named nine nieces and nephews, share and share alike.

As heretofore stated, the claim was disallowed by the probate court and was appealed to the district court.

The foregoing recital of the record in this case is intended as a summary of the evidence introduced by claimants at the trial in the district court. Respondent appellees' evidence consisted of the introduction of certain probate court records about which there is no dispute. Insofar as the facts are concerned, the only dispute arises over whether Frank had expressed the wish that after his death Spangler should receive the eighty-acre tract, and whether the oral agreement by Katherine to bequeath and devise *all* of her property to her nieces and nephews, in consideration of the conveyance to her by Sarah and Louise, was ever made.

In other words, the gist of the entire matter is that Sarah and Louise claim that the oral agreement with Katherine was made, that they performed, and that Katherine did not.

During the course of the trial objections were made to the admissibility of certain evidence of claimants. The effect of rulings thereon is not clear from the record. In any event, at the time the case was decided and conclusions of fact and of law were filed, the court notified all counsel by letter that:

"So much of the evidence in this case as tends to vary or contradict the terms of a written contract is stricken and such evidence has not been con-

sidered by the Court in reaching its decision. Such evidence is considered to be incompetent and its admission is in violation of the parol evidence rule."

Certain of the findings relating to formal matters, concerning which there is no dispute, require no attention.

The substance of findings numbered 3, 4 and 5 is that prior to his death Frank expressed the wish that the eighty-acre tract in question be given to Spangler; that following his death Katherine told his brother and sisters of such wish; that George and Abbie immediately agreed to such disposition; that thereafter Frank's heirs-at-law entered into a written family agreement for the disposition and division of his estate, and that in such instrument all of the parties agreed that during his lifetime Frank had expressed the desire that Spangler receive the eighty-acre tract from his estate in compensation for his labor and help during the last years of Frank's life.

Finding number 6 is to the effect the deed to Katherine from her brother and sisters to the eighty-acre tract was given in consideration of the written family agreement.

The substance of finding number 7 is that in the family agreement Frank's heirs-at-law agreed to a division of Frank's estate, less the eighty-acre tract, and designated Katherine as their agent to perform all acts necessary in order to effect such division.

Finding number 12 reads:

"12. That during the administration of the estate of Frank S. Hupp, deceased, Katherine E. Hupp, as Administratrix, had several conversations with claimants and the other heirs at law of Frank S. Hupp, with respect to the disposition and division of the real and personal property of said estate, the true nature and extent of which cannot be determined from the evidence, but all of which are so closely related to the subject dealt with in the written family agreement dated September 17, 1949, that said prior conversations and negotiations are deemed merged into said written family agreement."

The conclusions of law are:

"1. That all transactions, conversations, and negotiations had between Katherine E. Hupp, as Administratrix of the estate of Frank S. Hupp, deceased, and the other heirs at law of said decedent respecting the disposition and division of the real and personal property of said estate were so closely related to the subject dealt with in the written family agreement of September 17, 1949, that said prior conversations, transactions and negotiations are deemed to be merged into said written family agreement.

"2. That the act of the said decedent, Katherine E. Hupp, in effecting the transfer of certain real estate herein described to Louis Spangler, was

the act of each of the heirs at law of Frank S. Hupp, deceased, including the claimants herein, Sarah E. Dillman and Louise Prouty, performed by her as their agent under the terms and provisions of the family settlement agreement made in connection with the voluntary partition or division of all of the real estate and personal property of the estate of Frank S. Hupp, deceased.

"3. That the family agreement, bill of sale, and the deeds referred to in the foregoing Findings of Fact, all bearing the date of September 17, 1949, construed together constitute a complete unambiguous, binding contract.

"4. Katherine E. Hupp did not enter into a verbal agreement with her sisters, Sarah E. Dillman and Louise Prouty, that she would leave, will or devise all her property unto her nieces and nephews, the children of Sarah E. Dillman and Louise Prouty.

"5. The claim of the petitioners is hereby denied."

Post-trial motions, including a motion for a new trial, were overruled, and claimants Sarah and Louise have appealed, specifying nine grounds of alleged error.

Our examination of the record convinces us that the lower court tried the case on an erroneous theory and that claimants are therefore entitled to a new trial.

As before stated, really only two matters were in dispute. The first was whether it was Frank's wish that Spangler have the eighty-acre tract after his death. By the very language of the quoted portion of the written family agreement Frank's heirs "agreed" that such was the fact. The other question was whether the alleged oral agreement, whereby, in consideration of the conveyance by Sarah and Louise of their interests in the eighty-acre tract to Katherine so that the latter could in turn convey it to Spangler, Katherine agreed to bequeath and devise *all* of her property to the children of Sarah and Louise, was ever made. Narrowed down, that was actually the only issue in the case.

It must be remembered that this claim is against Katherine's estate, not Frank's. For all the record shows Frank's estate was completely settled and divided in accordance with the written family agreement. No complaint concerning that is made.

It appears the lower court followed the theory that evidence of the alleged oral agreement between claimants and Katherine was inadmissible under the parol-evidence rule in that it tended to vary or contradict the terms of the written family agreement. In so ruling we believe the court was in error.

The family agreement, which pertained solely to *Frank's* estate, was one thing. The alleged oral agreement, which pertained to the disposition by *Katherine* of *her* estate, was another. The al-

leged oral agreement in no way varied or contradicted the written family agreement. It is quite true that both were concerned with the disposition of the eighty-acre tract to Spangler, but in all other respects they were separate and distinct. The family agreement had nothing whatever to do with the manner in which Katherine was to dispose of her estate.

Concerning the general rule to the effect that a written contract is deemed to merge into itself all prior negotiations with reference to the subject matter, this court said in *In re Estate of Boller*, 173 Kan. 30, 244 P. 2d 678:

"We recognize the general rule contended for, but there are exceptions to it, and among them is one that the parol evidence rule does not preclude the admission of extrinsic evidence of a valid prior parol agreement which is separate both in form and substance from the written contract, although related in a general way to it. If the oral agreement does not vary or contradict the written agreement nor invade the particular field which the latter undertakes to cover, but instead has for its subject a matter the parties might naturally deal with separately, the oral agreement may be enforced." (p. 37.)

Counsel for respondent appellees call our attention to the specific finding in conclusion of law number 4, *supra*, in which the court held that the oral agreement was never made, and contend such holding requires an affirmance of the judgment.

We concede that it is the province of the trial court to weigh the evidence, and that ordinarily specific findings based on competent, substantial evidence will not be disturbed on review. But that is not the proposition we have here.

In its letter to counsel the court stated that all evidence which tended to vary or contradict the terms of the written family agreement was stricken. As we read the record, the ruling of necessity must have referred to evidence of the alleged prior oral agreement between claimants and Katherine respecting the disposition of the *latter's* estate. Finding number 12 and conclusion of law number 1, *supra*, have reference to the disposition and division of Frank's estate, not Katherine's. We think that clearly it was error for the court to strike this evidence and that the action was tried on an erroneous premise. That being the case, we have no alternative than to grant a new trial. (*Wyatt v. Taylor*, 166 Kan. 453, 201 P. 2d 647.)

We have not ignored numerous other contentions advanced by the parties to this appeal. All have been examined and considered, but, in view of our conclusion, require no discussion.

The judgment is reversed with directions to grant a new trial.