No. 42,894

In the Matter of the Estate of U. S. Goff, Deceased. (STEVE CLAYTON GOFF, a minor, and PERRY LENN GOFF, a minor, by EVELYN GOFF BROCK, their mother and natural guardian, *Appellees*, v. DAVID U. GOFF and MARY C. GOFF, Executors of said Estate, *Appellants*.

(379 P. 2d 225)

18

Opinion filed March 2, 1963.

*J. Eugene Balloun,* of Great Bend, argued the cause, and *Oscar Ostrum,* of Russell, was with him on the brief for the appellants.

*Alex M. Fromme,* of Hoxie, argued the cause, and *Joseph W. Fromme,* also of Hoxie, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action based upon a claim against an estate wherein it is alleged the decedent prior to his death orally agreed to will a section of real property to his two grandsons (third party beneficiary claimants) as part of the consideration for a property settlement involving a divorce of the decedent's son. Pursuant to the provisions of G. S. 1949, 59-2402a, as amended, and 59-2402b, the matter was transferred from the probate court to the district court where, after hearing, the claim was allowed. Appeal has been duly perfected from the judgment and various rulings and orders of the trial court.

The underlying question is whether, under the facts and circumstances here presented, the oral promise is enforceable as a matter of law.

Evidence as to whether the oral promise was actually made by the decedent was in sharp conflict. It may be said the basic findings of fact made by the trial court are supported, in substance, by the evidence, assuming the evidence under challenge on appeal was admissible. We shall, therefore, not burden our reports with a detailed account of the evidence, but present the facts by quoting the findings made by the trial court as set forth in its journal entry of judgment:

"FINDINGS OF FACT.

"1. The decedent, U. S. Goff, died testate in Graham County, Kansas, on the 15th day of December, 1958, a resident of Graham County, Kansas. Mary C. Goff and David U. Goff were duly appointed, qualified, and are now acting as executors of said estate. The petitioners, Steve Clayton Goff and Perry Lenn Goff, are minors. They filed their joint claim against the estate by their mother and natural guardian, Evelyn (Goff) Brock. No legal guardian has been appointed for said minors. Their claim was properly and timely filed in the Probate Court of Graham County, Kansas, and transferred upon proper petition, notice, and order to the District Court for trial as provided by G. S. 1959, 59-2402a and 59-2402b.

"2. The decedent, U. S. Goff, was survived by the following heirs-at-law:
Mary C. Goff, his widow;
David U. Goff, a son;
Beth Collins, a daughter;

Miron D. Goff, a son;

Perry C. Goff, a son;

and the petitioners, Steve Clayton Goff and Perry Lenn Goff, are the children of Perry C. Goff and grandsons of the decedent.

"3. The decedent's last will and testament was admitted to probate in the Probate Court of Graham County, Kansas, on July 27, 1959. It was dated and executed on May 24, 1958. The terms of said will bequeathed and devised all personal property and one half interest in all real estate owned by him at his death to Mary C. Goff, his widow. The other one half interest in the real estate was devised to Mary C. Goff for her life, and on her death the remainder in fee to David U. Goff, a son. No specific real estate was described by the testator in his will.

"4. The decedent held legal title to 2720 acres of land in Graham County, Kansas, at the time of his death, and included therein was 640 acres of land referred to in the evidence as the 'Park's Place,' and specifically described as follows: [Description omitted] all lying and situated in Graham County, Kansas, and subject to mineral reservations of record.

"5. Perry C. Goff and Evelyn (Goff) Brock were first married in 1950. One son, Steve Clayton Goff, was born August 26, 1952, and the other son, Perry Lenn Goff, was born December 1, 1954. The parents were divorced in February, 1956. They remarried on December 2, 1956. They were again divorced in May 1959 by decree of a Florida court. Evelyn (Goff) Brock was granted the care, custody and control of the minor children, and they have continued to live with their mother in Florida.

"6. During the marriage Perry C. Goff acquired the 640 acres of land known as the 'Park's Place' *from his father and mother, U. S. and Mary C. Goff.* The deed of conveyance was introduced in evidence as 'Petitioners' Exhibit 1.' The deed was acknowledged January 24, 1957, and recorded February 21, 1957. This deed was on a standard general warranty deed form, *and the only reservation therein related to an interest in oil, gas and other minerals reserved to U. S. Goff and Mary C. Goff jointly and to terminate on the death of the survivor.* The warranty clause contained no mention of prior grants or reservations. No condition subsequent was contained in the deed.

"7. Perry C. Goff and Evelyn (Goff) Brock and their two children continued to live on the farm in the house with U. S. and Mary C. Goff after Perry C. Goff acquired the 'Park's Place.' In the late summer and fall of 1957 Perry C. Goff and Evelyn (Goff) Brock began having marital difficulties. While living with U. S. and Mary C. Goff, Perry C. Goff engaged in farming operations with his father on the Goff farms. A crop of milo had been planted and was growing on the farm. Fall wheat had been planted, and Perry C. Goff had some interest in the milo, wheat and livestock on the farm. He also was the owner of a car and a welding truck outfit.

"8. Evelyn (Goff) Brock consulted an attorney, Mr. Kenneth Clark, of Hill City, Kansas, about the domestic difficulties with her husband. These consultations covered a period from the middle of August to the 1st of November, 1957. During this time not only Evelyn (Goff) Brock, but also Perry C. Goff, U. S. Goff and Mary C. Goff talked with Mr. Clark in an attempt to work out the marital difficulties. During the latter part of October it became ap-

parent to Evelyn that no reconciliation could be made between her and her husband, and she directed her attorney, Kenneth Clark, to prepare divorce papers to be filed in court against Perry C. Goff in which she would seek a divorce, alimony, property settlement, and support and custody of the minor children.

"9. A petition was prepared by Mr. Clark together with other papers to restrain Perry C. Goff from disposing of his personal property. *At that time Perry C. Goff held legal title to the 640 acres of land known as the 'Park's Place.' The land was subject to two mortgages. One mortgage was held by the Federal Land Bank of Wichita, Kansas, to secure a note signed by U. S. Goff, Mary C. Goff, Perry C. Goff and Evelyn Goff, in the sum of $7,100.00. The other mortgage was held by U. S. Goff and Mary C. Goff, jointly, to secure a note signed by Perry C. and Evelyn Goff, in the sum of $18,900.00.* Certified copies of these mortgages and the $18,900.00 note was introduced in evidence and appear in the record as Petitioners' Exhibits 2, 5, and 6, respectively.

"10. On the 30th day of October, 1957, Perry C. Goff, Evelyn (Goff) Brock, and U. S. Goff went to the office of Clark, Chipman & Clark, attorneys, in Hill City, Kansas, to attempt to work out a settlement of property rights, alimony, custody and support of the minor children between Perry C. Goff and Evelyn Goff. *At that time in the presence of Kenneth Clark, Evelyn Goff, and Perry C. Goff, he (U. S. Goff) expressed an interest in the welfare of the minor children of the marriage. He stated that he would will the 640 acres of land known as the 'Park's Place' on his death to his grandchildren, Steve Clayton Goff and Perry Lenn Goff, provided Evelyn would join with her husband in deeding the land to U. S. Goff, and provided further that she would release all claim which she might have in the growing crop of milo and wheat and all farming operations of U. S. and Perry C. Goff. As a part of this offer U. S. Goff agreed to release Evelyn from any liability on the note and mortgage he held against the land, and to save her harmless against the Federal Land Bank note and mortgage.*

"11. After discussing the offer among themselves at the Goff farm, Perry C. Goff, Evelyn (Goff) Brock and U. S. Goff returned to the offices of Clark, Chipman & Clark, at Hill City, Kansas on *November 2, 1957. There in the presence of Marion W. Chipman, Perry C. Goff, Evelyn (Goff) Brock, and Mr. and Mrs. S. A. Crosby, who are the parents of Evelyn, U. S. Goff renewed his previous offer and the same was accepted by Evelyn. On that date Perry C. Goff and Evelyn Goff, his wife, executed and delivered to U. S. Goff a deed to the 'Park's Place.'* This deed appears in the evidence as 'Petitioners' Exhibit 3.' *At that time Evelyn Goff executed and delivered to U. S. Goff a written release covering all crops and farming operations on the Goff farm.* This release appears in the evidence as 'Petitioners' Exhibit 4.' *U. S. Goff then arranged for an advance to Perry C. Goff of $1,000.00 which was paid to Evelyn, and a further advance of $125.00 which was paid to her attorneys.*

"12. *U. S. Goff orally agreed at this time to will the 'Park's Place' to his grandchildren, Steve Clayton Goff and Perry Lenn Goff, on his death. This oral agreement was a major consideration and inducement to Evelyn Goff and caused her to deed the 'Park's Place' to U. S. Goff and to release all claim to the crops and farming operations of U. S. Goff and Perry C. Goff.*

"13. *U. S. Goff did not devise the land known as the 'Park's Place' to Steve Clayton Goff and Perry Lenn Goff*. He failed to carry out the terms of the oral agreement made by him on November 2, 1957, for the benefit of these grandchildren. The oral agreement was clear and convincingly proven. It was fully and completely performed by Evelyn (Goff) Brock when she joined in the execution of the deed to this land and executed the release in writing of all claim to crops and farm operations of U. S. Goff and Perry C. Goff on November 2, 1957. *All that remains to complete the agreement is to transfer title to this land specifically described in finding (4) herein to these two grandchildren.*

"14. The oral agreement set up and alleged by defendants in their amended answer to live in the 'Park's Place' or deed it back to U. S. Goff, was neither discussed nor considered by the parties on November 2, 1957, when the deed to U. S. Goff (Petitioners' Exhibit 3) was executed and delivered." (Emphasis added.)

The *written documents* evidencing the foregoing property settlement were as follows:

(1) Petitioners' Exhibit 3—a deed to Park's Place from Perry C. Goff and Evelyn Goff, his wife, *to U. S. Goff*. The deed did not name Mary C. Goff as a grantee, although she was obligated on the Federal Land Bank note and mortgage and an equal owner with U. S. Goff of the additional mortgage for $18,900. The consideration recited in the deed was the sum of $1,000, receipt of which was acknowledged. *The deed was subject to the 1957 taxes and mortgages of record, and subject to outstanding minerals of record, and also subject to oil and gas leases of record.*

(2) Petitioners' Exhibit 4—a release as follows:

"RELEASE AND AGREEMENT.

"The undersigned Evelyn Goff, wife of Perry C. Goff, does hereby assign any and all interest that she may have either individually, or as the wife of Perry C. Goff, in any of the growing crops or farming operations of Perry C. Goff and U. S. Goff.

"She further agrees that she will not again claim any interest in any of said farming operations and that U. S. Goff is the sole owner. The consideration for this being that U. S. Goff has advanced to Perry C. Goff the sum of $1000.00 paid to her and $125.00 to her attorneys Clark, Chipman and Clark. In addition to that consideration U. S. Goff releases the said Evelyn Goff and Perry C. Goff of all their obligations on a note and mortgage dated December 6, 1956, and the same is hereby cancelled. U. S. Goff assumes and agrees to pay the Federal Land Bank mortgage in the sum of Approximately $7100.00. Dated and signed this 2nd day of November, 1957.

Evelyn Goff"

(3) Petitioners' Exhibit 6—the original note from Perry C. Goff and Evelyn Goff to U. S. Goff and Mary C. Goff in the sum $18,900. Written across the face of this note is: "Paid Nov. 2nd, 1957," under which appears the signature of U. S. Goff.

(4) Defendants' Exhibit A—a canceled check in the sum of $1,000 to Evelyn Goff signed by Casey Jones (attorney for U. S. Goff) showing that it was in payment "For all of her interest in all their (Perry & Evelyn) Property except house which belongs to Evelyn and all Goff & Goff farming operations."

(5) Defendants' Exhibit B—a canceled check in the sum of $125 to Clark, Chipman & Clark signed by Casey Jones showing that it was in payment for "Goff & Goff."

It is clear from the record, and the parties agree, that the $1,000 recited as consideration in the deed (petitioners' Exhibit 3) and the $1,000 recited in the release (petitioners' Exhibit 4) is the same $1,000, and defendant's Exhibit A evidences its payment.

After making the findings of fact, heretofore quoted, the trial court made written conclusions as follows:

"CONCLUSIONS OF LAW.

"1. This agreement of November 2, 1957, was fair, just and equitable in its terms and was fairly and reasonably entered into by the parties to provide for the minor children of Perry C. Goff and Evelyn Goff as a part of a final settlement of property rights of the parties in contemplation of a divorce between Perry C. Goff and Evelyn Goff. U. S. Goff held a present interest in matters in controversy. The agreement is valid and binding upon the parties to this action.

"2. The oral agreement was based upon a valid consideration furnished by the mother when she released all rights and claims she held to the land, crops and farming operations. The petitioners, her children, became third party beneficiaries to this agreement.

"3. The oral agreement to devise this property to the petitioners does not vary, nor change the terms of written instruments, such as the deed from Perry C. and Evelyn Goff to U. S. Goff, or the release and assignment of interest in growing crops and farming operations from Evelyn Goff to U. S. and Perry C. Goff. The written instruments referred to transferred all rights purported to be covered thereby, and thereafter Evelyn Goff held no further rights in either the land or in the crops and farming operations. The petitioners were not parties to the deed nor to the release and make no claim to the property by reason of said instruments. Even though the petitioners are minors and must prosecute this action by their mother and natural guardian, this does not change the fact that the minors are the real parties in interest. Evelyn (Goff) Brock is not claiming any interest in this land.

"4. The agreement by U. S. Goff to devise the land to Steve Clayton Goff and Perry Lenn Goff was a major consideration and inducement to obtain the deed to the land and to obtain a release of valuable rights in which Evelyn (Goff) Brock at that time had a legal claim of interest. The petitioners became third party beneficiaries of this agreement, and no assent to the contract or knowledge on their part of its existence is necessary to give them a right of action on it.

"5. The agreement was fully performed by Evelyn Goff by the execution and delivery to U. S. Goff of the deed to the land, and by the execution and delivery of the release of all claim to crops and farming operations in which both Perry C. Goff and U. S. Goff held an interest. The Statute of Frauds, G. S. 1949, 33-106 is not a bar to the enforcement thereof.

"6. The decedent, U. S. Goff, failed to carry out the terms of the agreement to will the land to his two grandchildren, the petitioners. The terms of this oral agreement should be specifically enforced against the Estate of U. S. Goff, deceased, by the decree and order of the court.

"7. The petitioners are entitled to judgment on their claim for specific performance of the oral agreement against the Estate of U. S. Goff, deceased; and they should have set over to them in equal undivided shares all right, title and interest held by the decedent, U. S. Goff, at the date of his death in the following described real estate in Graham County, Kansas, to-wit: [Description of Park's Place omitted]

"8. The evidence introduced by defendants attempting to establish the alleged oral agreement to live in the 'Park's Place' is not convincing to this Court. No such agreement was made.

"9. The petitioners, Steve Clayton Goff and Perry Lenn Goff, are adjudged to be the owners of said land, and all rents, profits and income from the same which have accrued since the decedent's death should be set over to them subject to payment of taxes.

"10. The costs of this proceeding should be taxed to and against the Estate of U. S. Goff, deceased."

Thereafter the executors of the estate of U. S. Goff, deceased (appellants) filed a motion for a new trial, a motion to vacate findings of fact, a motion to vacate conclusions of law, and a motion to clarify the findings and conclusions with relation to "the joint tenancy royalty reservation interest held and owned by U. S. and Mary Goff as joint tenants, with full right of survivorship, under deed made, executed and delivered by said U. S. Goff and Mary C. Goff, his wife, to Perry C. Goff, dated December 6, 1956, covering the Park's Place in Graham County, Kansas."

All of the foregoing motions were overruled with one exception. Conclusion of law No. 9 was amended to provide that "the petitioners, Steve Clayton Goff and Perry Lenn Goff, are adjudged to be the owners of said land subject however to any valid liens against the property existing at the date of death of U. S. Goff."

This change made by the trial court as a result of the post-trial motions, and further efforts in pursuit of the change, is the subject of a separate appeal decided this date. (*In re Estate of Goff*, No. 43,093, 191 Kan. 94, 379 P. 2d 240.)

Twenty-four specifications of error are assigned for review on appeal, most of which concern rulings of the trial court admitting

evidence of the alleged oral agreement over objections. It may be said generally, if the oral agreement found to have been made by the trial court is enforceable as a matter of law, the admission of the evidence by the trial court was proper, but if the oral agreement was not enforceable as a matter of law, it was inadmissible and should have been stricken, or not admitted in the first place.

Thus, many of the specifications resolve basically into one point —that findings made by the trial court are based upon incompetent evidence and are contrary to the terms of the written contract and deed executed by the parties on November 2, 1957.

In their ninth specification of error the appellants summarize their complaint by stating the trial court erred:

"In adopting each and all of the conclusions of law entered and made on July 31, 1961, on the ground that each and all of said conclusions are based upon incompetent and insufficient evidence, are contrary to the preponderance of the evidence in said cause, and that said conclusions taken as a whole violate the statute of frauds, and alter, change and vary the terms of the written agreement entered into between the parties on November 2, 1957, and as being contrary to the law and evidence in said cause."

Many decisions in this court support the general proposition that an oral agreement to devise land may be enforced against the estate of a decedent. Situations in which such oral agreements have been recognized as enforceable are presented in the following cases: *Bichel v. Oliver*, 77 Kan. 696, 95 Pac. 396; *James v. Lane*, 103 Kan. 540, 175 Pac. 387; *Taylor v. Holyfield*, 104 Kan. 587, 180 Pac. 208; *Woltz v. First Trust Co.*, 135 Kan. 253, 9 P. 2d 665; *Dent v. Morton*, 148 Kan. 97, 79 P. 2d 875; *In re Estate of Henry*, 157 Kan. 471, 142 P. 2d 717; *Jones v. Davis*, 165 Kan. 626, 197 P. 2d 932; *In re Estate of Wert*, 165 Kan. 49, 193 P. 2d 253, rehearing 166 Kan. 159, 199 P. 2d 793; *In re Estate of Hilliard*, 172 Kan. 552, 241 P. 2d 729; *In re Estate of Boller*, 173 Kan. 30, 244 P. 2d 678; *In re Estate of Good*, 175 Kan. 576, 266 P. 2d 719; and *In re Estate of Hupp*, 177 Kan. 202, 277 P. 2d 618.

The facts in the case of *In re Estate of Hupp*, supra, are similar to those in the case at bar. There the action originated as a demand against the estate of Katherine E. Hupp, deceased. Frank Hupp died intestate in 1948 and left as his heirs at law Katherine, George, Abbie, Sarah and Louise, his brother and four sisters. While Frank's estate was pending in court, Katherine was instrumental in working out a family settlement agreement among the heirs so that Frank's previously declared wish—giving 80 acres of

land to an employee, Louis Spangler—would be fulfilled. In negotiating for the family settlement agreement, two of the sisters objected to deeding the 80 acres to Spangler. Whereupon it was alleged Katherine orally agreed that if they would deed the 80 acres to her, so she in turn could deed the property to Spangler, she would leave *all her property* upon her death to the children of Sarah and Louise, they being Katherine's only nephews and nieces. A deed was thereupon executed by the brother and three sisters to Katherine conveying the 80-acre tract in question, which recited that it was made in consideration of the division of property belonging to the estate of Frank Hupp. Katherine in turn deeded the 80 acres to Spangler, and this deed recited that the conveyance was made to carry out the wishes of Frank Hupp. At the same time the foregoing deeds were executed, a written family agreement was entered into by George, Abbie, Sarah, Louise and Katherine for the distribution and settlement of Frank's estate. In the written agreement a division of the property was made based upon the appraised value of the estate, after deducting the appraised value of the 80 acres in question. The agreement recited the expressed desire of Frank Hupp to leave Spangler the 80-acre tract as compensation for his labor and help during the last years of Frank's life.

Thereafter Katherine died leaving a last will and testament, executed on the day of her death, in which she left approximately $40,000 of her $100,000 estate to institution and friends other than her nephews and nieces, they being the children of Sarah and Louise.

Sarah and Louise filed their claim, in the nature of a demand, against Katherine's estate setting out the alleged oral agreement with Katherine. The claim was disallowed by the probate court and on appeal to the district court it was also disallowed, after striking the extrinsic evidence of a prior parol agreement. The Supreme Court reversed with directions to grant a new trial, saying:

'The family agreement, which pertained solely to *Frank's* estate, was one thing. The alleged oral agreement, which pertained to the disposition by *Katherine* of *her* estate, was another. The alleged oral agreement in no way varied or contradicted the written family agreement. It is quite true that both were concerned with the disposition of the eighty-acre tract to Spangler, but in all other respects they were separate and distinct. The family agreement had nothing whatever to do with the manner in which Katherine was to dispose of her estate.

"Concerning the general rule to the effect that a written contract is deemed to merge into itself all prior negotiations with reference to the subject matter, this court said in *In re Estate of Boller*, 173 Kan. 30, 244 P. 2d 678:

" 'We recognize the general rule contended for, but there are exceptions to it, and among them is one that the parol evidence rule does not preclude the admission of extrinsic evidence of a valid prior parol agreement which is separate both in form and substance from the written contract, although related in a general way to it. If the oral agreement does not vary or contradict the written agreement nor invade the particular field which the latter undertakes to cover, but instead has for its subject a matter the parties might naturally deal with separately, the oral agreement may be enforced.' (p. 37.)" (pp. 207, 208.)

For the reasons hereafter stated, we think the law pronounced in the *Hupp* case as applied to the facts there presented controls the decision herein.

In this jurisdiction a party may avail himself of a contract made by others for his benefit, and he may maintain an action thereon, notwithstanding he is not a party to such contract, or had no knowledge of it, when it was made. (*French v. French*, 161 Kan. 327, 167 P. 2d 305, and cases cited therein at p. 330; *Hagerman v. Hagerman*, 160 Kan. 742, 165 P. 2d 431; *In re Estate of Hilliard*, supra; and see, 12 Am. Jur., Contracts, § 291, p. 844; and anno. 53 A. L. R. 181.)

The petitioners herein (the minor appellees) are third party donee beneficiaries to the agreement made by their mother (appellee) and their grandfather. They are legally the principal parties interested in the claim. The fact that they are minors without a legal guardian and are required to prosecute this action by their mother and natural guardian does not change the interests of the petitioners.

The appellants in the case at bar consistently refer to the agreement for the property settlement which contemplated a divorce as being a written agreement.

While it may be conceded that all of the agreements made by the parties in the instant case constitute one entire transaction, it would be incorrect to say that the parties, after negotiations, committed their agreements to a written contract. When agreement was finally reached by the parties it was oral. That is, the negotiations terminated upon Evelyn's oral acceptance of the terms, conditions and promises. It provided for the execution of a warranty deed by Evelyn and Perry to U. S. Goff, and a release to be signed by Evelyn only. To accomplish the payment two checks were made in writing. No other writing was prepared by the attorneys and

none was signed by the parties. The only signatures affixed by Perry and Evelyn to the same instrument were those affixed to the warranty deed. It contained no reference to any agreement for property settlement. The release was signed only by Evelyn, and no written instrument was prepared for the signature of U. S. Goff with either Evelyn or Perry as signatories. The release was prepared by the attorney for U. S. Goff, and the checks were signed by the attorney for U. S. Goff. The $18,900 note was canceled by writing the word "PAID" and giving the date over the signature of U. S. Goff across the face of the note. This was the only signature affixed by U. S. Goff to any of the writings.

Contrary to the appellants' contention, U. S. Goff did not furnish the cash consideration mentioned in the release. The money was paid by Casey Jones. U. S. Goff merely advanced the money, through his attorney, as a loan to his son, Perry. Only $1,000 was paid to Evelyn in the property settlement, although the same $1,000 is recited as the consideration in both the deed and the release. It is thus significant that the $1,000 recited in the deed was not paid as consideration for the conveyance, unless it could be said Perry, one of the grantors, paid himself and Evelyn, the other grantor, money for the privilege of conveying the property to U. S. Goff as grantee.

It may therefore be said the evidence introduced at the trial which was of a written nature did not constitute a written agreement. The written instruments merely proved performance of a part of the oral agreements in the entire transaction.

As in the *Hupp* case, the oral agreement to devise the Park's Place to the petitioners by U. S. Goff was *entirely collateral, separate and distinct from the property settlement which contemplated a divorce between Evelyn and Perry.* It was between Evelyn and U. S. Goff and for the benefit of the two minor children—the petitioners.

Even though the consideration in a separate collateral agreement be small in comparison to the value received, such collateral agreements have been enforced. A case in point is *Stahl v. Stevenson,* 102 Kan. 447, 171 Pac. 1164. There a husband held a life insurance policy in which his deceased wife was named beneficiary. Desiring to collect its surrender value from the insurance company, the husband in compliance with a requirement of the insurance company procured a release from the heirs of his wife. In order to induce a daughter of a deceased son to sign such release, the husband promised to leave her one-third of his estate at his death, this

being the share she would have inherited had he then died intestate. She accepted the proposition and executed the release. When the husband died he left a will giving his property to others. In upholding the agreement the court said it did not regard the agreement as a contract for the sale of an interest in lands within the meaning of the statute of frauds. The court further held that the consideration furnished by the promisee, although small in comparison to the value of the property she would receive, was sufficient to support the agreement. In the opinion the court stated:

". . . The plaintiff was under no obligation to sign the instrument, and whatever the actual rights of the insured may have been as against the company, and whether or not the plaintiff had any interest whatever in the policy or its proceeds, her signature enabled him to realize upon it without controversy or litigation, and an agreement to pay for the accommodation was not rendered nonenforceable by the want of a valid consideration. . . ." (p. 452.)

Proof of a parol agreement relating to collateral matters was sustained in *Phipps v. Union Stock Yards Nat'l Bank*, 140 Kan. 193, 34 P. 2d 561. The court there said, "The parol evidence rule is not a rule of evidence, but of substantive law. Its applicability is for the court to determine, and when the result is reached it is a conclusion of substantive law." (p. 197.)

The rule was further explained by citing Restatement, Contracts, § 240, *Comment on Subsection* (1b) as follows:

"d. *The justification of the Parol Evidence Rule is that when parties in corporate an agreement in a writing it is a reasonable assumption that everything included in the bargain is set down in the writing.* Though this assumption in most cases conforms to the facts, and the certainty attained by making the rule a general one affords grounds for its existence, *there are cases when it is so natural to make a separate agreement, frequently oral,* in regard to the same subject-matter, *that the Parol Evidence Rule does not deny effect to the collateral agreement. This situation is especially likely to arise when the writing is of a formal character and does not so readily lend itself to the inclusion of the whole agreement* as a writing which is not limited by law or custom of a particular form. Thus, agreements collateral to a negotiable instrument if incorporated in it might destroy its negotiability, and in any event would deprive it of the simplicity of form characteristic of negotiable paper. *So in connection with leases and other conveyances, collateral agreements relating to the same subject-matter have been held enforceable.* These illustrations of what agreements 'might naturally be made' without inclusion in an integrated contract are not exclusive. It is not essential that a particular provision would always or even usually be made in a separate collateral agreement. It is enough that making such a provision in that way is not so exceptional as to be odd or unnatural." (Emphasis added.)

A recent case which involved a number of written instruments and one oral agreement is *Hummel v. Wichita Federal Savings & Loan Ass'n*, 190 Kan. 43, 372 P. 2d 67. After discussing the force and effect of the parol evidence rule the court said there is a wide distinction between an attempt to contradict the terms of a written instrument and to explain the circumstances and conditions under which it was executed and delivered. It has regularly been held that where a contract is incomplete or silent in any particular parol evidence is admissible to show the actual agreement between the parties, and this is not limited to cases where there is ambiguity. (See, also, *Kirk v. First National Bank*, 132 Kan. 404, 295 Pac. 703.) The parol evidence rule is not violated when such evidence tends to show the relation of the parties and the circumstances under which the instruments were executed. (*Handrub v. Griffin*, 127 Kan. 732, 275 Pac. 196.)

The appellants contend it was error for the trail court to strike from its original answer the defense that the widow (Mary C. Goff) was entitled to an undivided one-half interest in the Park's Place by reason of a resulting trust.

Upon examination of the record it is found that Mary C. Goff and David U. Goff are executors of the estate of U. S. Goff, deceased. The petitioners filed their claim in the probate court on the 8th day of April, 1960, setting up the alleged oral contract entered into by U. S. Goff. Thereafter, on May 9, 1960, the executors filed an inventory and appraisal setting forth the description and valuation of all property *owned by the decedent. The fiduciarys' affidavit was sworn to by Mary C. Goff and recited that it was a complete inventory of all the estate of U. S. Goff, deceased,* which had come into her possession or knowledge. *It specifically described,* among other real estate, *the 640 acres known as the Park's Place.* (Mineral interests held by Mary C. Goff were shown by reason of previous joint tenancy ownership with U. S. Goff and reservations upon conveyance.)

On August 13, 1960, Mary C. Goff and David U. Goff filed their answer and written defense to the claim.

The defense which the executors claim was denied to them attempted to show that U. S. Goff did not own the Park's Place at the time of his death—thus setting fourth details inconsistent with the sworn affidavit of Mary C. Goff as a fiduciary in the estate.

Therefore, Mary C. Goff was attempting to take an inconsistent position in that portion of the original answer which the trial court struck.

Nowhere does it appear that Mary C. Goff resigned as an executrix, or that she filed a claim against the estate of U. S. Goff, setting forth her ownership to a one-half interest in the Park's Place on the theory of a resulting trust. Under the circumstances, Mary C. Goff, widow of U. S. Goff, deceased, was estopped to assert the defense which the trial court struck from her original answer to the claim filed by the petitioners. (*Wilson v. Stephenson,* 143 Kan. 91, 53 P. 2d 874.)

Finding No. 6 is supported by evidence and discloses that Mary C. Goff and U. S. Goff, as joint tenants, conveyed the fee title to the Park's Place to Perry Goff. At that time Mary C. Goff divested herself of any title to the Park's Place subject, however, to a reservation of oil, gas and other minerals held by U. S. Goff and Mary C. Goff as joint tenants. The grantors also took a mortgage from Evelyn and Perry in the sum of $18,900, and obligated themselves on another note and mortgage to the Federal Land Bank of Wichita, Kansas, with Evelyn and Perry (Finding No. 9).

Upon the conveyance of the Park's Place by Evelyn and Perry to U. S. Goff, Mary C. Goff was left out. Insofar as the record discloses, therefore, the interest which Mary C. Goff conveyed was never returned to her.

By conclusion of law No. 9, as modified, the petitioners were adjudged to be the owners of the Park's Place subject to any valid liens against the property existing at the date of death of U. S. Goff. What interest Mary C. Goff had, if any, in outstanding liens, or in oil, gas and other mineral reservations, is not the subject of this appeal. Certainly, the petitioners could take no greater title to the Park's Place from the estate of U. S. Goff than the interest which U. S. Goff had in the Park's Place at the time of his death.

Upon all of the facts and circumstances presented by the record herein, it is held the trial court's action in striking the defense, which asserted a resulting trust in favor of Mary C. Goff, from her original answer did not prejudicially affect the substantial rights of Mary C. Goff.

The oral agreement made by U. S. Goff to will the Park's Place to the petitioners was supported by sufficient consideration.

The consideration which Evelyn gave was fulfilled by the performance of her part of the agreement. Evelyn released all her rights in 640 acres of land on which U. S. Goff and Mary C. Goff held a mortgage—land which U. S. Goff and Perry were farming. While it is true that Evelyn had only an inchoate interest in the Park's Place, it was, nevertheless, the interest for which U. S. Goff bargained. She further released any claim to 700 acres of standing milo, an unknown number of acres of growing wheat, and other farming operations being jointly carried on by U. S. Goff and his son, Perry. She also abandoned her contemplated action for divorce and property settlement in Graham County, which would have involved all farming operations of U. S. Goff. (She later procured a divorce from Perry in the state of Florida.) This was sufficient consideration. (*See, Stahl v. Stevenson,* supra.)

Mutual promises and acceptance of benefits, however small, constitute valid consideration. (*Potucek v. Blair,* 176 Kan. 263, 270 P. 2d 240; *First Federal Savings & Loan Ass'n v. Thurston,* 148 Kan. 88, 80 P. 2d 7; *Kramer v. Walters,* 103 Kan. 135, 172 Pac. 1013; and *Peoples Exchange Bank v. Miller,* 139 Kan. 3, 29 P. 2d 1079).

The appellants contend the particular interest to be willed by the decedent was indefinite—that the petitioners failed to prove whether U. S. Goff was to make a will devising the property to the petitioners in fee simple absolute, or whether he was to devise the property subject to encumbrances, mineral reservations and leases.

The indefiniteness claimed by the appellants relates only to the extent of the title held by U. S. Goff in the Park's Place. It is clear U. S. Goff could devise no greater interest in the Park's Place to the petitioners than he held at the time of his death. As heretofore stated, the extent of the title acquired by the petitioners could be no greater than that held by U. S. Goff at the time of his death, and this is not the subject of this appeal. At the time the oral agreement was made by U. S. Goff it was not known how long he would live. This was recognized in the last will and testament of U. S. Goff when he made the following devise:

"I hereby give, devise and bequeath an undivided one-half interest in and to *all of the real estate that I may own or be entitled to at my death* to my wife Mary C. Goff." (Emphasis added.)

Accordingly it is held the conclusions of law made by the trial court are supported by its findings of fact, which in turn are supported by the evidence presented in the record.

The judgment of the lower court is affirmed.

PARKER, C. J., not participating.

SCHROEDER, J., dissenting: In my opinion, the oral agreement in the instant case violates the statute of frauds for the reasons hereafter assigned.

No doctrine is better established or more frequently applied than the following: Where parties have carried on negotiations, and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written agreement constitutes the contract between them and determines their rights. (*Arensman v. Kitch,* 160 Kan. 783, 789, 165 P. 2d 441, including cases cited therein; and *Oliver v. Nugen,* 180 Kan. 823, 308 P. 2d 132.)

In *Brown v. Beckerdite,* 174 Kan. 153, 254 P. 2d 308, it was said when oral conversations or negotiations lead to the execution of a written contract, they are to be merged into the written instrument, from which the terms of the contract are to be determined.

It has also been recognized that where two or more writings are executed contemporaneously and refer to and are a part of the same transaction, they will be construed together to ascertain the true agreement of the parties. (*Steele v. Nelson,* 139 Kan. 559, 32 P. 2d 253.)

It has also been held where two instruments are executed by the same parties, at or near the same time, in the course of the same transaction, and concerning the same subject matter, they will be read and construed together, although they do not in terms refer to each other. (*Skinner v. Skinner,* 126 Kan. 601, 270 Pac. 594; *Shepard, Executrix v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125, 134, 368 P. 2d 19, and cases cited therein.)

Other cases to the same effect are *Hudson v. Riley,* 104 Kan. 534, 180 Pac. 198, Syl. ¶ 1; *Dearborn Motor Credit Corporation v. Neel,* 184 Kan. 437, 448, 337 P. 2d 992; and *Farmers & Merchants Bank v. Copple,* 190 Kan. 170, 174, 373 P. 2d 219.)

An exception to the general rule—that all prior oral negotiations are deemed to be merged in a written agreement—is a unilateral admission, such as an ordinary receipt, or the mere acknowledgment of the receipt of purchase-money in a conveyance, which ordinarily is not conclusive upon the parties as to the consideration stated. *But when it appears from the writing that the statement*

*of consideration is contractual, and not merely a matter of recital, it is not open to contradiction by oral proof.* (*Milich v. Armour,* 60 Kan. 229, 56 Pac. 1; *Wheeler, Kelly & Hagny Inv. Co. v. Curts,* 158 Kan. 312, 147 P. 2d 737, and cases cited therein.) Furthermore, parol evidence cannot be admitted, nor will it be received, *where it would operate to defeat or destroy the conveyance itself.* (*Miller v. Edgerton,* 38 Kan. 36, 15 Pac. 894.)

In the instant case when the parties were negotiating in the law office of Marion Chipman, who represented Evelyn as her attorney, only U. S. Goff and Perry were involved with Evelyn as parties in the negotiations for the agreement. When the terms were agreed U. S. Goff and Perry Goff went to the office of their attorney, Casey Jones, for the preparation of the necessary written documents to consummate the agreement. Casey Jones testified without contradiction that he prepared the written documents, *after talking with Marion Chipman on the telephone, and that Chipman told him what instruments were necessary to consummate the agreement.* No mention was made in this conversation between Chipman and Jones concerning any oral promise made by U. S. Goff. In fact, at different times both Clark and Chipman, who were Evelyn's attorneys, advised Evelyn against entering into an arrangement based upon an oral promise of U. S. Goff to will the Park's Place to the petitioners. But efforts on the part of these attorneys to get this alleged promise of U. S. Goff in writing never materialized.

While the release in question was prepared for the signature of Evelyn only, it did in memorandum form recite the contractual obligations imposed upon U. S. Goff. *On this point it is important to remember that the written "RELEASE AND AGREEMENT" was prepared by U. S. Goff's attorney at his request.* The release recites that U. S. Goff advanced to Perry the sum of $1,000. which he paid to Evelyn, and further advanced $125 to Perry which he paid to the attorneys for Evelyn. This establishes that the money paid by U. S. Goff was a loan to Perry and not consideration passing from U. S. Goff to Evelyn. *The consideration passing from U. S. Goff was then recited in the "RELEASE AND AGREE-MENT."* U. S. Goff was to release Evelyn and Perry of all their obligations on a note and mortgage dated December 6, 1956, held by U. S. Goff and Mary C. Goff. Fulfillment of this recital is disclosed by the $18,900 note which U. S. Goff canceled by writing "PAID" across the face and giving the date (November 2, 1957)

over his signature. The release further recited that U. S. Goff assumed and agreed to pay the Federal Land Bank mortgage in the sum of approximately $7,100. This is definitely a contractual obligation.

All written documents evidencing the agreement between the parties dovetail perfectly together, and in my opinion, comprise the agreement between the parties. These documents are to be construed together as one written agreement.

Permitting parol testimony to change the consideration flowing from U. S. Goff to Evelyn, consideration which is contractual in nature, flies directly in the face of the cases heretofore cited.

It should be stated at this point that Perry, upon the original purchase of the Park's Place from U. S. Goff and Mary C. Goff, actually paid no cash money. The entire consideration consisted of the Federal Land Bank note and mortgage, which Evelyn and Perry assumed, together with U. S. Goff and his wife, and the note and mortgage for $18,900 given by Evelyn and Perry to U. S. Goff and his wife. On November 2, 1957, when the parties subsequent to the negotiations came to terms, no payment had been made by Evelyn and Perry on the note to U. S. Goff and his wife, and the first payment on the Federal Land Bank note and mortgage had not been made.

It is, therefore, obvious that as of that moment Evelyn and Perry did not have one dime in the Park's Place. Furthermore, Evelyn's only interest in the land was an inchoate interest.

Subsequent thereto, however, oil was found, and when the claim herein was filed two wells were producing oil on the Park's Place.

Another rule of law prevents the admission of evidence to establish the oral agreement alleged to have been made by U. S. Goff on November 2, 1957.

The deed from Evelyn and Perry to U. S. Goff purports to convey the title *in fee simple* to U. S. Goff. Admission of the parol agreement would, in substance, drastically limit and restrict the interest which U. S. Goff is entitled to claim under the deed. In fact, it reduces his interest from that of a fee simple estate to a life estate in the Park's Place.

In *Brungardt v. Smith,* 178 Kan. 629, 290 P. 2d 1039, it was held that every conveyance of real estate shall pass all of the estate of the grantor therein, unless the intent to pass a lesser estate *shall expressly appear or be necessarily implied in the terms of the grant.* (G. S. 1949, 67-202.)

A deed is usually conclusive as to the description and boundaries of the property conveyed, and the estate or interest conveyed. Parol or extrinsic evidence is not admissible to engraft reservations or limitations on a deed or to defeat or vary express reservations. (*Brown v. Parmalee*, 130 Kan. 165, 285 Pac. 563; and *Brungardt v. Smith*, supra; see, also, *Miller v. Edgerton*, supra; and 32 C. J. S., Evidence, § 916, p. 838.)

On this point the case of *In re Estate of Hupp*, 177 Kan. 202, 277 P. 2d 618, is quite clearly distinguishable. The estate of Katherine in the *Hupp* case was quite different and distinct from the 80 acres which was the subject of conveyance to Spangler in settlement of the estate of Frank Hupp.

In the instant case the subject of the oral agreement is the Park's Place, just as it was the subject of the warranty deed concerning the property settlement in the pending divorce case. The deed reduced to writing the conveyance of the Park's Place, and the settlement was further evidenced by other written documents.

Another rule which applies to the facts in the instant case is that the consideration alleged for an oral agreement may not be attributable to any other relationship between the parties. In other words, *it must appear that the consideration claimed in support of the oral promise must have been done or performed because of such promise, and not for other reasons, considerations or relationship.*

The petition in the instant case alleges that the "oral agreement to devise was a major consideration and inducement to her [Evelyn] for the purpose of getting her to release her rights in said land and in and to the other property and crops owned by her husband." *This admits the oral promise was only a partial consideration for the deed*, and it conflicts with the actual consideration expressed in the deed and release, executed after the oral promise was made. The written evidence of the contract makes no mention of the alleged oral promise.

Many years ago in *Long v. Duncan*, 10 Kan. 294, the following instruction was said to lay down the true rule:

"2d.—That to take a case of *parol contract for the purchase of land* out of the operation of the statute of frauds, under the plea of part performance, the alleged contract should be first shown to be clear, definite, and unequivocal in all its terms; and second, the acts of part performance should clearly appear to have been done *solely in pursuance of the contract alleged*, and solely with a view to such contract being performed." (p. 297.) (Emphasis added.)

The rule applicable to the facts in the instant case is more clearly stated in 49 Am. Jur., Statute of Frauds, § 526, p. 825; and 69 A. L. R. 128, 129.

The foregoing rule was restated in substantially the same language in the case of *In re Estate of Duncan,* 186 Kan. 427, 350 P. 2d 1112, where it is said "the performance must be attributable to the alleged contract as distinguished from some other relationship between the parties." (p. 433.)

The law in this jurisdiction is well settled that the *intention of the parties to a deed* must be derived from the language of the deed itself, which cannot be impeached except upon equitable grounds of accident, mistake, fraud and the like, none of which appears in the instant case. (*Oaks v. Hill,* 182 Kan. 501, 503, 322 P. 2d 814, and cases cited therein.)

It is respectfully submitted the trial court erred in the admission of evidence to establish the parol agreement which is at variance with the written agreement entered into between the parties.

FATZER, J., joins in the foregoing dissent.